Jacob E. COWE, by Ann Cowe, Parent and Guardian, Appellant (Plaintiff Below),

v.

FORUM GROUP, INC., Appellee (Defendant Below).

No. 41S04–9107–CV–569.

Supreme Court of Indiana.

July 25, 1991.

Dennis V. Panarisi, Marion, for appellant.

Geoffrey Segar, John T. Murphy, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

DICKSON, Justice.

Should Indiana recognize a separate tort action for wrongful life, as declared by the Indiana Court of Appeals? *Cowe v. Forum Group, Inc.* (1989), Ind.App., 541 N.E.2d 962. We grant transfer and hold otherwise.

This is an appeal on behalf of plaintiff-appellant Jacob E. Cowe (Cowe) from a summary judgment entered by the trial court as to Count IV of the complaint. This count sought damages for the medical attention, care, support, maintenance, and education of Cowe until age 21 by reason of the alleged negligence of defendant-appellee Forum Group, Inc., (Forum) operator of River–View Manor Nursing Home in Marion, Indiana. Cowe was born on March 25, 1986, to Melanie Meredith, a lifelong, profoundly retarded adult in the total custodial care of the defendant's private nursing home. With only the mental capacity

of an infant, Melanie has been unable to walk, talk, or care for herself. Shortly after his birth, Jacob was adopted by Ann Cowe.

Count IV alleges negligence in two respects. It first asserts that the failure to protect Melanie Meredith from rape proximately caused Cowe's birth "into a world in which there was no natural parent capable of caring for and supporting him." Record at 7. Second, it claims that the failure to timely detect the pregnancy until its fifth month proximately caused a failure of proper prenatal care resulting in physical injury to Cowe, the extent of which is still undetermined. Asserting in part that Count IV failed to state any claim upon which relief could be granted, Forum sought and received summary judgement in its favor.[1] On appeal, Cowe raises the following designated issues:

1) Is there a genuine issue of material fact that the operator of a nursing home may be held liable for child support under imputed paternity principles where a male patient in the nursing home's care rapes one of the nursing home's female patients, resulting in the birth of the infant plaintiff?

2) Is there a genuine issue of material fact that the operator of a nursing home may be held liable for an infant's alleged physical injuries resulting from the nursing home's failure to timely detect the pregnancy of the infant's mother, a patient of the nursing home, and failing to provide the infant plaintiff proper prenatal care?

Brief of Appellant to the Court of Appeals at 1–2.

■ These issues address the propriety of the trial court's grant of summary judgment and call for the application of familiar principles. Upon appellate review of summary judgment, this Court views the same matters and issues that were before

---

1. The six-count complaint also included claims on behalf of Melanie Meredith alleging negligence, violations of administrative regulations, and deprivation of constitutional rights in failing to protect her from rape, and claims of Melanie's parents, Richard and Violet Meredith, for their damages resulting from Melanie's rape

and pregnancy. The trial court granted Forum's motion for summary judgment as to all claims except Count I asserting Melanie's negligence action. This appeal alleges error only as to Count IV which presented the claims of Jacob Cowe.

the trial court and follows the same process. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439. A summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Any doubt as to the existence of a factual issue should be resolved against a moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Bridgewater v. Economy Eng'g Co.* (1985), Ind., 486 N.E.2d 484. Summary judgment may be proper when there is no dispute regarding a fact which is dispositive of the action. *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552. In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723; *Tanasijevich's Estate v. City of Hammond* (1978), 178 Ind.App. 669, 383 N.E.2d 1081; *see generally* 3 W. Harvey, *Indiana Practice* § 56.9 (2d ed. 1988). The party moving for summary judgment must shoulder the burden of establishing the lack of a material factual issue. *Kahf,* 461 N.E.2d at 729; *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143. Once the movant has met this burden, an opposing party is obliged to disgorge sufficient evidence to show the existence of a genuine triable issue. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243. The opposing party's obligation does not arise until after the movant has shown himself entitled to summary judgment. *Marathon Petroleum v. Colonial Motel* (1990), Ind.App., 550 N.E.2d 778; *Kahf,* 461 N.E.2d 723; *Johnson v. Padilla* (1982), Ind.App., 433 N.E.2d 393. The contents of all pleadings, affidavits, and testimony are liberally construed in the light most favorable to the nonmoving party. *Ayres v. Indian Heights Vol. Fire Dept.* (1986), Ind., 493 N.E.2d 1229.

### 1. Failure To Protect Patient From Rape

To the extent that Count IV is viewed as a paternity action seeking to impose vicarious liability, the Court of Appeals found it without merit. We agree and pursuant to Ind. Appellate Rule 11(B)(3) summarily affirm the decision of the Court of Appeals upon this issue. To the extent that Count IV otherwise presents a claim for damages to Cowe from Forum's failure to protect its patient from rape, the Court of Appeals reversed the summary judgment and remanded for trial not only applying a theory of negligence, but also advancing a separate "wrongful life" theory of liability. We now reexamine these determinations.

A brief summary of the prevailing nomenclature may be helpful. An action for "wrongful conception or pregnancy" refers to a claim for damages sustained by the parents of an unexpected child alleging that the conception of the child resulted from negligent sterilization procedures or a defective contraceptive product. *Siemieniec v. Lutheran Gen. Hosp.* (1987), 117 Ill.2d 230, 237, 111 Ill. Dec. 302, 307, 512 N.E.2d 691, 696. This action is recognized in Indiana. *Garrison v. Foy* (1985), Ind.App., 486 N.E.2d 5. The phrase "wrongful birth" applies to claims brought by the parents of a child born with birth defects alleging that due to negligent medical advice or testing they were precluded from an informed decision about whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate it. *Garrison,* 486 N.E.2d at 7; *Siemieniec,* 117 Ill.2d at 235, 111 Ill.Dec. at 307, 512 N.E.2d at 696; *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 467, 656 P.2d 483, 488. When such action seeks damages on behalf of the child rather than the parents, the phrase "wrongful life" instead of "wrongful birth" is employed. *Garrison,* 486 N.E.2d at 7; *Siemieniec,* 117 Ill.2d at 236, 111 Ill.Dec. at 306–07, 512 N.E.2d at 695–96; *see, e.g., Azzolino v. Dingfelder* (1985), 315 N.C. 103, 107, 337 S.E.2d 528, 531; *Turpin v. Sortini* (1982), 31 Cal.3d 220,

225, 182 Cal.Rptr. 337, 340 n. 4, 643 P.2d 954, 957 n. 4.[2]

■ We first observe that the Court of Appeals erroneously considered the existence of a potential cause of action for "wrongful life" as if it were distinct from the plaintiff's tort action for negligent failure to prevent the rape. Claims seeking damages for "wrongful life" fall within generally applicable common law tort principles. *Lininger v. Eisenbaum* (1988), Colo., 764 P.2d 1202, 1209; *Turpin*, 31 Cal.3d at 229, 182 Cal.Rptr. at 342, 643 P.2d at 959; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 410, 413 N.Y.S.2d 895, 899, 386 N.E.2d 807, 811. The question is not whether the plaintiff may have separate causes of action for negligence and for wrongful life, but rather whether the plaintiff's negligence action may seek damages related to his birth and its circumstances.

An overwhelming majority of other jurisdictions considering the issue have rejected claims for wrongful life by children born with congenital disorders. *See generally Lininger*, 764 P.2d at 1210; *Siemieniec*, 117 Ill.2d at 238, 111 Ill.Dec. at 307, 512 N.E.2d at 696; *Azzolino*, 315 N.C. at 110, 337 S.E.2d at 533. There are two interrelated grounds upon which the denial of recovery usually rests. The first is a general conceptual unwillingness to recognize any cognizable damages for a child born with a genetic impairment as opposed to not being born at all. *Becker*, 46 N.Y.2d at 412, 413 N.Y.S.2d at 900, 386 N.E.2d at 812; *Siemieniec*, 117 Ill.2d at 239, 111 Ill. Dec. at 308, 512 N.E.2d at 697. Judicial recognition of the defective child's birth as an injury to the child would raise profound questions.

[T]he implications of any such proposition are staggering. Would claims be honored, assuming the breach of an identifiable duty, for less than a perfect birth? And by what standard or by whom would perfection be defined?

*Becker*, 46 N.Y.2d at 411, 413 N.Y.S.2d at 900, 386 N.E.2d at 812. The second basis for rejecting wrongful life claims is the impossibility of calculating compensatory damages to restore a birth defective child to the position he would have occupied were it not for the defendant's negligence.

Because children with genetic disorders ... are impaired from the moment of conception, it is impossible for them to have a fundamental right to be born as whole individuals. Hence, the only alternative to their suffering, and the standard against which their compensation must be determined, is nonexistence.

*Siemieniec*, 117 Ill.2d at 242, 111 Ill.Dec. at 309, 512 N.E.2d at 698. The wrongful life action thus involves "a calculation of damages dependent upon the relative benefits of an impaired life as opposed to no life at all." *Siemieniec*, 117 Ill.2d at 240, 111 Ill.Dec. at 308, 512 N.E.2d at 697. This is a "comparison the law is not equipped to make." *Becker*, 46 N.Y.2d at 412, 413 N.Y.S.2d at 900, 386 N.E.2d at 812.

In contrast, courts in the states of California, New Jersey, and Washington have authorized damages for wrongful life, permitting a child's recovery of extraordinary medical expenses attributable to the congenital defect, although generally disallowing general damages. *Turpin*, 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954; *Procanik by Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755; *Harbeson*, 98 Wash.2d 460, 656 P.2d 483. Minimizing the issues of cognizable injury and calculation of damages requiring comparison to nonexistence ("We need not become preoccupied, however, with these metaphysical considerations," *Procanik*, 97 N.J. at 353, 478 A.2d at 763), these concerned and thoughtful

---

**2.** The phrases "wrongful birth" and "wrongful life" do not apply to cases which allege a defendant's tortious conduct as the cause of abnormalities in infants that would otherwise have been born normal and healthy. *See, e.g., Empire Casualty Co. v. St. Paul Fire and Marine Ins. Co.* (1988), Colo., 764 P.2d 1191 (negligent obstetrical care during mother's first two pregnancies as cause of avoidable hemolytic disease developed in child of third pregnancy); *Renslow v. Mennonite Hosp.* (1977), 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (mother's RH-negative blood sensitized by improper transfusion, resulting in prenatal damage to child later conceived); *Sylvia v. Gobeille* (1966), 101 R.I. 76, 220 A.2d 222 (failure to prescribe gamma globulin for pregnant mother notwithstanding her exposure to German measles).

decisions, like that of our Court of Appeals in this case, emphasize public policy considerations such as the "alleviation of financial burdens," *Turpin*, 31 Cal.3d at 239, 182 Cal.Rptr. at 348, 643 P.2d at 965; "respond[ing] to the call of the living for help in bearing the burden of their affliction," *Procanik*, 97 N.J. at 353, 478 A.2d at 763; and "foster[ing] societal objectives of genetic counseling and prenatal testing," and "discourag[ing] malpractice," *Harbeson*, 98 Wash.2d at 481, 656 P.2d at 496.

However, we believe that such considerations of public policy are better suited to legislative than judicial determination. Persuaded that the generally prevailing view is better reasoned and more consistent with established principles of tort law, we conclude that "life, even life with severe defects, cannot be an injury in the legal sense." *Azzolino*, 315 N.C. at 109, 337 S.E.2d at 532. Damages for wrongful life are not cognizable under Indiana law.

Seeking to avoid application of this majority view rejecting wrongful life claims, Cowe insists that he "has made no claim that he should not have been born, nor that nonexistence is preferable to his life." Brief of Appellant (to the Court of Appeals) at 17. He expressly disavows any claim "that but for the negligent conduct of another he would have been aborted." Brief in Opposition to Defendant's Petition to Transfer at 8. Apart from the separate claim of negligent prenatal care, discussed below, the gravamen of Cowe's remaining Count IV claim is that Forum's negligence impinged upon his "right to be born to a mother who chose to conceive him, to carry him to birth, to appreciate his existence and provide some minimum level of care for him." Appellant's Brief in Opposition to Defendant's Petition to Transfer at 10. Melanie Meredith's disabilities preexisted his conception and are not alleged to have been caused by the defendant. Cowe argues that it is the unavoidable loss of maternal care beginning at the instant of his birth, and not the fact of his birth, of which he complains. We do not find this distinction to be significant.

■ To ascertain whether Cowe's birth circumstances may constitute cognizable harm, the determinative issue is causation. An essential element in a cause of action for negligence is the requirement for a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. W. Prosser & W. Keeton, *The Law of Torts* § 41 at 263–66 (5th ed. 1984). This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendant's conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

■ Cowe's claim essentially argues that, due to the defendant's negligence, he was born to the wrong mother. However, if his biological mother had been a person other than the unfortunately incapacitated Melanie Meredith, there would be no Jacob Cowe. The only way the plaintiff could have been spared the burden of having been born to a mother incapable of providing care and support is not to have been born at all. To the extent that the defendant's conduct caused the plaintiff such suffering, it also caused the plaintiff's existence.

Here we cannot find that but for Forum's alleged negligence Cowe would have been spared the asserted harm, the absence of affection and support of his biological mother, because Cowe would not have even existed without Forum's said conduct. Because the considerations involved in assessing damages for Jacob Cowe's birth to an incapacitated mother are parallel to those associated with determining wrongful life damages for children conceived with congenital defects, the recovery sought by Cowe is likewise not cognizable. Thus while the plaintiff here seeks to distinguish his claim from the traditional wrongful life case, the same considerations are present which have led a majority of jurisdictions, now including Indiana, to hold that wrongful life damages are not cognizable.

We therefore conclude that no cause of action is stated in plaintiff's Count IV claim to the extent that it seeks damages for the

defendant's negligence in failing to protect his mother from rape thereby causing his birth to parents incapable of care and support. Summary judgment was properly entered as to this issue.

### 2. Failure To Detect Pregnancy

Count IV of the complaint also alleges the negligent failure to timely detect the pregnancy of Cowe's mother, thereby resulting in a failure of proper prenatal care and consequential physical injury to Cowe in utero. He argues that Forum failed to demonstrate the absence of genuine issues of material fact and that the trial court erred in entering a summary judgment as to the issue of prenatal tort.

Forum argues that it had no duty to diagnose the pregnancy or to detect Cowe's fetal existence, and that any injuries resulting from omitted or negligent prenatal care fail to satisfy the proximate cause requirement because Forum could not have foreseen that Melanie would be raped, that she would conceive, that the fetus would go undetected following conception, that a viable child would be born, and that he would develop a resulting injury.

▇▇▇ The tort of negligence is comprised of three elements: 1) a duty on the part of the defendant in relation to the plaintiff; 2) a breach of that duty, i.e., failure on the part of the defendant to conform his conduct to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff proximately resulting from that failure. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 369; *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. The arguments of Forum challenge the elements of duty and proximately caused injury.

▇▇▇ The question of whether a duty to exercise care arises is governed by the relationship between the parties and is an issue of law within the province of the court. *Douglass*, 549 N.E.2d 368; *Gariup Constr. Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224; *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280.

▇▇▇ Clearly Forum owed a duty to Melanie Meredith, a total care resident patient in its nursing home, as an invitee. This duty was to exercise reasonable care for her protection. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637; *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821. In addition, because the nursing home was aware of the disabilities and infirmities which rendered her unable to care for herself, Forum had a duty analogous to that of a common carrier to provide protection and care. *Stropes v. Heritage House Childrens Center* (1989), Ind., 547 N.E.2d 244. The "extraordinary standard of care" thus imposed, *id.* at 254, would require a greater degree of attention and care for a disabled resident than the usual standard of reasonable care. *See Heger v. Trustees of Indiana Univ.* (1988), Ind.App., 526 N.E.2d 1041, 1043 n. 4.

Because Count IV of the complaint presents the claims of Jacob Cowe, not Melanie Meredith, Forum contends that there is no basis to find any duty of care or protection to an unborn fetus of which it was unaware. Noting the nebulous nature of the concept of duty and that fact that no universal test for it ever has been formulated, this Court recently observed:

> No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

*Gariup*, 519 N.E.2d at 1227 (quoting W. Prosser & W. Keeton, *supra*, § 53, at 359 (5th ed. 1984)).

Prior to 1946, nearly all the decisions from various jurisdictions denied recovery to children born in an injured condition as a result of injuries to the mother. *See generally* W. Prosser & W. Keeton, *supra*, § 55, at 367 (5th ed. 1984). Since then, however, there has been a "rather spectacular reversal of the no-duty rule." *Id.* at 368.

> The child, if he is born alive, is now permitted in every jurisdiction to maintain an action for the consequences of prenatal injuries, . . . .

*Id.* Observing that there "appears no American jurisdiction with a decision still

standing refusing recovery," according to its accompanying comments,[3] the *Restatement (Second) of Torts* § 869 (1979), provides:

(1) One who tortuously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive.

(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides.

■ Under the facts alleged in the present case, given the extreme dependence of Melanie Meredith upon Forum for her protection and care, and the great degree of control available to Forum in the discharge of its obligations, we have no hesitation in declaring that Forum's duty to Melanie also extended to her unborn child. A breach of such duty proximately resulting in injury to the child would support a cause of action on behalf of the child, Jacob Cowe.

■ Forum's argument that its alleged negligence was not the proximate cause of Cowe's alleged injury is expressly predicated on its claim that it could not have foreseen that Melanie Meredith would be raped and become pregnant. This argument fails because the claim of failure to detect the pregnancy and enable prenatal care does not encompass Forum's conduct with respect to its alleged failure to protect Melanie Meredith from rape. It is only Forum's acts and omissions following the inception of Melanie's pregnancy which are involved in this prenatal tort claim. For this claim, proximate cause is required to link Cowe's injuries only with the charged negligent failure to detect, not the failure to protect.

With respect to Cowe's allegation of injury from negligent prenatal care, Forum does not argue or identify any evidence in the record which negates such claim, which burden Forum must carry as the party seeking summary judgment, as discussed above. *Kahf*, 461 N.E.2d 723; *Tanasijevich's Estate*, 383 N.E.2d 1081.

Therefore, because the facts asserted by Cowe present a cause of action for negligence, and because Forum has failed to show that there are undisputed facts as to any determinative issue, we find that the trial court erred in granting summary judgment as to Cowe's prenatal tort claim.

Transfer is granted. Except as otherwise summarily affirmed, the opinion of the Court of Appeals is vacated. With respect to the plaintiff Jacob Cowe's Count IV claim for damages resulting from the alleged negligent failure to prevent the rape, summary judgment in favor of defendant Forum Group, Inc., is affirmed. As to plaintiff's Count IV claim for damages resulting from a failure to timely detect the pregnancy and enable prenatal care, summary judgment is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and KRAHULIK, JJ., concur.

---

**3.** Appendix to Restatement (Second) of Torts § 869 app. (1982).