Gregory J. CRAM, as Personal Representative of the Estate of George J. Cram, Appellant–Plaintiff,

v.

Ray HOWELL, M.D., Appellee–Defendant.

No. 67A01–9508–CV–259.

Court of Appeals of Indiana.

March 22, 1996.

Thomas A. Withrow, B. Keith Shake, Debra A. Mastrian, Henderson, Daily, Withrow & DeVoe, Indianapolis, for appellant.

John David Hoover, Sally F. Zweig, Ronald G. Sentman, Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

The question presented for review in this case is whether a physician, who administers to his patient a vaccination which subsequently causes the patient to lose consciousness and injure a third person, owes the injured third person a duty of care. Appellant-plaintiff Gregory J. Cram, as personal representative of the Estate of George J. Cram, claims that the trial court erred in dismissing his medical malpractice and wrongful death complaint against appellee-defendant Ray Howell, M.D., on the ground that Dr. Howell did not owe a duty to Cram.

## FACTS

Dr. Howell is a licensed physician who practices medicine in Roachdale, Indiana. On May 23, 1990, Rodney S. Weninger visited Dr. Howell's office where he was given various immunizations and vaccinations. After receiving these vaccinations and prior to leaving Dr. Howell's office, Weninger experienced two episodes of loss of consciousness. Sometime thereafter, Weninger left Dr. Howell's office and began to drive himself home. However, Weninger lost consciousness once again, causing him to lose control of his vehicle. Weninger's vehicle collided with a vehicle under which Cram was working. Cram suffered severe injuries which subsequently caused his death.

In October of 1991, Cram filed a medical malpractice action against Dr. Howell with the Indiana Department of Insurance. Record at 2. On June 20, 1994, pursuant to IND.CODE § 27–12–11–1, Cram filed in the Putnam Circuit Court, a proposed wrongful death complaint against Dr. Howell alleging that Dr. Howell was negligent in administering the vaccinations to Weninger and in failing to warn Weninger of the dangers of driving after receiving vaccinations, and that such negligence proximately caused Cram's death.[1]  R. at 1–3.  Further, the proposed

---

1. While generally a trial court does not have jurisdiction over a medical malpractice complaint until proceedings before the Indiana Department of Insurance conclude, I.C. § 27–12–11–1(a)(1) provides a trial court with limited subject matter jurisdiction to preliminarily determine a question of law presented to it by a party who has filed with the court a copy of a proposed complaint and a written motion requesting a preliminary determination.  The trial court, how-

complaint also alleged that Dr. Howell owed a duty of care to Cram and that as a result of Dr. Howell's negligence in treating and failing to warn Weninger, he breached that duty to Cram. Along with his complaint and as provided for under I.C. § 27–12–11–1, Cram filed a motion for preliminary determination of law requesting that the court find, as a matter of law, that Dr. Howell owed Cram a duty. In the motion, Cram acknowledged that if the court determined that no duty existed as a matter of law then, pursuant to Ind.Trial Rules 12(D) and 12(B)(6), the complaint could be dismissed. In response, Dr. Howell filed a brief in opposition to Cram's motion for preliminary determination in which he contended that, as a matter of law, he did not owe a duty to Cram. R. at 23–39. In support of his motion, Dr. Howell designated material issues of fact as well as evidence in the form of his answers to Cram's interrogatories and his affidavit. Cram contested Dr. Howell's designation of evidence and requested that the court exclude Dr. Howell's answers to interrogatories and affidavit. On November 23, 1994, the trial court entered an order striking those materials. R. at 257.

On April 28, 1995, following a hearing on Cram's motion for preliminary determination, the trial court entered an order finding that, pursuant to T.R. 12(B)(6) and T.R. 12(D), Cram's proposed complaint did not state a cause of action upon which relief could be granted in that, as a matter of law, Dr. Howell did not owe a duty to Cram. R. at 276. The trial court's order also stated that Cram could amend his proposed complaint as of right within ten days of service of the court's order or the proposed complaint would be subject to dismissal. Cram did not amend the order and the trial court dis-

missed the proposed complaint. Cram now appeals.

## DISCUSSION AND DECISION

■ Initially, we note that Cram's motion was properly treated as one for dismissal under T.R. 12(B)(6), rather than as a motion for summary judgment under Ind.Trial Rule 56, because the trial court specifically excluded all matters outside the pleadings from its consideration. A T.R. 12(B)(6) motion to dismiss tests the legal sufficiency of a claim, not the facts supporting it. *Gray v. Westinghouse Electric Corp.*, 624 N.E.2d 49, 52 (Ind.Ct.App.1993), *trans. denied.* Therefore, in reviewing such a dismissal, we regard all facts in the complaint as true. *Bowman v. Bowman*, 567 N.E.2d 828, 830 (Ind.Ct.App.1991). We will affirm the dismissal if the complaint states a set of facts which, even if true, would not support the relief requested in the complaint.[2] *Id.*

■ Cram argues that the trial court erred in determining that Dr. Howell did not owe a duty to him and, as a result, the court erred in dismissing his proposed complaint for failure to state a claim upon which relief could be granted. In *Webb v. Jarvis*, 575 N.E.2d 992, 998 (Ind.1991), our supreme court discussed this issue and held that generally a physician does not owe a duty to an unknown nonpatient who may be injured by the physician's treatment of a patient. In *Webb*, the physician allegedly overprescribed anabolic steroids to a patient which caused him to become toxic psychotic and unable to control his rage. During one of his rages, the patient shot a third person. The third person sued the physician claiming that the physician owed him a duty. The Supreme Court disagreed and refused to impose such

ever, only has jurisdiction to entertain a motion for a preliminary determination during the time period after a proposed complaint is filed with the commissioner of insurance, but before the medical review panel renders its written opinion under IND.CODE § 27–12–10–22. I.C. § 27–12–11–1(c). The effect of this section is to allow a trial court to dismiss a proposed action at an early stage in the proceedings. *See Galindo v. Christensen*, 569 N.E.2d 702, 705 (Ind.Ct.App. 1991).

2. In his appellate brief, Cram cites to portions of Dr. Howell's answers to interrogatories and affidavit in support of his contentions. Dr. Howell, understandably, is outraged by Cram's reliance on these materials because, as a result of Cram's motion to strike, Dr. Howell was not permitted to rely on them before the trial court. Therefore, on appeal, Dr. Howell requests that we not consider these materials. We grant Dr. Howell's request because under our applicable standard of review, we may only consider those matters and evidence referred to in the pleadings.

a duty. Before arriving at its decision, the court stated that the following three factors must be balanced to determine whether a common law duty exists: 1) the relationship between the parties, 2) the reasonable foreseeability of harm to the person injured, and 3) public policy concerns. *Id.* at 995. Then, the *Webb* court analyzed the three factors and determined that: 1) because "there [was] no allegation that [the physician] knew or that [the third person], in fact, relied upon [the physician's] rendering of his professional services to his patient ... the relationship needed to impose a duty on [the physician was] lacking," 2) it was not reasonably foreseeable that the physician's prescription of anabolic steroids to his patient would cause the patient to become in such a state that he would shoot a third person, and 3) public policy considerations weighed against finding a duty on the part of the physician in that such a duty would force a physician to weigh the welfare of unknown persons against the welfare of a patient and the social utility derived from prescription medications outweighed the risk of harm to third persons. *Id.* at 995–98.

While Cram acknowledges *Webb,* he seems to question whether the case is still considered to be of precedential value by Indiana courts. Although Cram states in his appellate brief that *Webb* is still law, Appellant's Reply Brief at 3, he notes that the Supreme Court did not cite *Webb* in an applicable case decided less than one month after it. *See Cowe v. Forum Group, Inc.,* 575 N.E.2d 630 (Ind.1991). However, as pointed out by Dr. Howell, the Supreme Court and this court have indeed cited *Webb* in several other cases. e.g. *Walker v. Rinck,* 604 N.E.2d 591, 594 (Ind.1992); *Hooks SuperX v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994); *Wickey v. Sparks,* 642 N.E.2d 262, 266 (Ind.Ct.App. 1994), *trans. denied.* Further, just because a court does not cite a precedential case in a subsequent opinion does not necessarily mean that the court did not consider the prior decision to be of precedential value. Therefore, we clarify that *Webb* is still the law and is applicable to the present case.

Nevertheless, Cram asserts that the facts of this case are distinguishable from those in *Webb* and that these facts support a finding that Dr. Howell owed a duty to Cram. We disagree. Here, as in *Webb,* no special relationship existed between Dr. Howell and Cram that would give rise to a duty on the part of Dr. Howell. Specifically, Dr. Howell could not have had any knowledge that Cram relied upon Dr. Howell's rendering of professional services to his patient, Weninger, because Cram did not, in fact, rely upon Dr. Howell's services. Cram does not allege in his complaint that he had any prior contact with Dr. Howell or Weninger upon which he could base a claim of reliance.[3] Therefore, the relationship needed to impose a duty on Dr. Howell is lacking.

Further, as in *Webb,* Cram's complaint fails to establish that it was reasonably foreseeable that Dr. Howell's conduct would cause Cram harm. Specifically, Cram failed to allege a causal connection between routine vaccinations and traffic accidents. Additionally, Cram failed to allege that the particular injections Weninger received were likely to cause loss of consciousness or in fact caused him to lose consciousness. Therefore, we cannot say that the accident was reasonably foreseeable.

Finally, we find the public policy considerations espoused in *Webb,* which weighed against the imposition of a duty, particularly applicable to the present case. The *Webb* court found that:

> [t]he social utility derived from prescription medication can hardly be disputed and far outweighs the risk of harm to third parties. We can envision a situation where a prescription drug was known to cause possible behavioral side effects in certain patients. The physician may determine that the medication is necessary for his patient, thus putting the physician in an untenable situation: weighing his personal risk of exposure to liability from third persons possibly injured by the patient if the drug were to cause a violent reaction in

---

**3.** We observe that in *Webb,* the physician did in fact communicate with the third party prior to his being injured, yet the Supreme Court still determined that no special relationship giving rise to a duty existed.

the patient against his patient's need for the medication. Placing a physician in such an untenable situation is unacceptable.

*Id.* at 997. Similarly, the social utility derived from vaccinations and immunizations clearly outweighs the risk of harm to third parties. All individuals in society receive or should receive vaccinations and immunizations to protect their own health as well society's health in general. Therefore, imposing a duty on physicians such as Dr. Howell would place the physician in the untenable position of not wanting to vaccinate and immunize patients for fear that he or she would be held liable for subsequent injuries to third persons. Thus, a physician would be forced to weigh the welfare of unknown third persons against the welfare of the physician's patient. Based upon these considerations, we hold that public policy weighs against the imposition of a duty under these circumstances.

In summation, we hold that the balancing of the three factors to be considered in determining whether a duty should be imposed leads us to conclude that Dr. Howell did not owe a duty to Cram as a matter of law. Therefore, taking all the facts in Cram's proposed complaint as true, Cram would not be entitled to any relief. The trial court did not err in dismissing Cram's proposed complaint pursuant to T.R. 12(B)(6).

Judgment affirmed.

ROBERTSON and HOFFMAN, JJ., concur.