**Kim L. CONNER and Elizabeth Conner, Appellants– Plaintiffs,**

v.

**STATE of Indiana and Indiana Department of Natural Resources, Appellees–Defendants.**

No. 57A03–9811–CV–474.

Court of Appeals of Indiana.

Dec. 14, 1999.

sense of the 14th Amendment." *Dahl*, 239 Ind. at 411, 157 N.E.2d at 198 (quoting *Bragg v. Weaver*, 251 U.S. 57, 58, 40 S.Ct. 62, 63, 64 L.Ed. 135 (1919)).

Ann M. Trzynka, Avery Boyer & Van Gilder, Fort Wayne, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge

Plaintiffs–Appellants Kim L. Conner and Elizabeth Conner ("the Conners") appeal the trial court's order granting summary judgment in favor of Defendants–Appellees the State of Indiana and the

Indiana Department of Natural Resources (collectively, "the State"). We affirm.

The Conners raise a single issue for our review, which we restate as: whether the trial court erred in determining, as a matter of law, that the State did not owe a private duty to the Conners.

The facts most favorable to the nonmovants indicate that on May 28, 1995, the Conners visited the Chain–O–Lakes State Park, where they used a set of playground equipment located near the park's beach. Kim Conner began using a swing, the seat of which was constructed of reinforced rubber and secured with metal rivets. As Conner was swinging, the rubber portion of the swing's seat pulled away from the rivets, causing Conner to fall and suffer personal injuries.

■ On May 7, 1997, Kim Conner filed a complaint against the State asserting a claim for his injuries. Elizabeth Conner joined as a plaintiff asserting a claim for loss of consortium. The State thereafter filed a Motion for Summary Judgment alleging that no private duty was owed to the Conners. After considering the submissions of the parties, the trial court entered findings and conclusions granting the State's motion.[1] (R. 183–89). This appeal ensued.

■ When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding their weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that

judgment is warranted as a matter of law. *Hanson v. Saint Luke's United Methodist Church*, 704 N.E.2d 1020, 1022 (Ind.1998). Although the nonmoving party has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not denied his day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). Summary judgment is rarely appropriate in negligence actions; however, summary judgment may be suitable to determine the legal question of whether a duty exists. *Ashcraft v. Northeast Sullivan County Sch. Corp.*, 706 N.E.2d 1101, 1103 (Ind.Ct. App.1999).

The Conners contend that the trial court erred in granting summary judgment in favor of the State. According to the Conners, the State's provision of playground equipment for the public's use imposed a duty upon the State to affirmatively inspect and maintain it. Thus, the argument continues, the State's failure to maintain the playground facilities in a reasonably safe condition amounts to an affirmative act of negligence, giving rise to the breach of a private duty owed to the Conners.

■ The existence of a duty is a question of law for the court. *Ashcraft*, 706 N.E.2d at 1103. In determining whether a duty exists, we balance three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Id.* at 1103–04; *Indiana State Police v. Don's Guns & Galleries*, 674 N.E.2d 565, 568 (Ind.Ct.App.1996), *trans. denied.* However, a plaintiff seeking to recover against a governmental entity for negligence must show more than a duty owed to the public at large. *Aldridge v. Department of Natural Resources*, 694 N.E.2d 313, 316 (Ind.Ct.App.1998), *trans. denied.* Rather, liability of a governmen-

---

1. Specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on this court. *Jones v. Western Reserve Group*, 699 N.E.2d 711, 714 (Ind.Ct.App.1998), *trans. denied.*

tal entity will not be found unless the relationship between the parties is one that gives rise to a special or private duty owed to the particular plaintiff. *Id.; Kantz v. Elkhart County Highway Dep't,* 701 N.E.2d 608, 611 (Ind.Ct.App.1998), *trans. denied* (quoting *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994)). In *Mullin,* our supreme court articulated a three-part test for determining whether an otherwise public duty is converted into a private duty due to a special relationship between the parties. *Mullin,* 639 N.E.2d at 284. The test establishes the following elements as prerequisites for imposing a private duty on governmental defendants:

> (1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of an injured party;
>
> (2) knowledge on the part of the municipality that inaction could lead to harm; and
>
> (3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

*Mullin,* 639 N.E.2d at 284.

█ The *Mullin* test does not apply where the plaintiff alleges that the governmental entity engaged in an affirmative act of negligence. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1067 (Ind.Ct. App.1995), *trans. denied.* The test applies only in determining whether a duty is owed based upon a governmental entity's alleged failure to act. *Id.*

█ In their complaint, the Conners alleged that the State was negligent in that it (1) failed to inspect the swing for broken or damaged parts; (2) failed to repair or replace the swing; and (3) failed to warn the Conners of the swing's dangerous and unsafe condition. All of these counts allege failures to act and not affirmative negligence. *See McCormick v. State, Department of Natural Resources,* 673 N.E.2d 829, 838 (Ind.Ct.App.1996); *Plummer v. Bd. of Commissioners of St. Joseph County,* 653 N.E.2d 519, 522–23 (Ind.Ct. App.1995), *trans. denied.* The *Mullin* test is clearly applicable, and the record is devoid of any designated evidence that establishes an explicit assurance by the State, through promises or actions, that it would act on behalf of the Conners. Accordingly, as a matter of law, the Conners failed to establish the existence of a private duty.

The trial court properly entered summary judgment on the basis of the *Mullin* test.

Affirmed.

GARRARD, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting

I respectfully dissent. The existence of a duty, that is, whether the law will impose an obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff arises as a matter of law out of the relationship existing between the parties. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991). The *Webb* court held that a court's determination of whether a duty exists should involve the balancing of the three following factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Id.* at 995.

In *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 280, 283 (Ind.1994), the plaintiff alleged that a municipality had been negligent in failing to dispatch an ambulance in response to a 911 call. This is a discrete context in which the public policy considerations in favor of affording governmental immunity are so compelling that our General Assembly has since created a specific subdivision in the Indiana Tort Claims Act ("ITCA") to provide governmental immunity for the losses arising out the "development, adoption, implementation, operation, maintenance, or use

of an enhanced emergency communication system." IND.CODE § 34–4–16.5–3(18); *Barnes, as Mayor of the City of Gary v. Antich*, 700 N.E.2d 262, 265 n. 5 (Ind.Ct. App.1998) (noting that *Mullin* preceded the adoption of the subsection of the ICTA providing immunity with respect to the operation of a 911 system), *trans. denied.* The *Mullin* court adopted the three-part private/public duty test noting that:

> this test takes into account each of the three factors *Webb* [cited above] requires that we balance. Not only must the harm to the injured party be foreseeable, the relationship between the governmental entity and the injured person must be such that the governmental entity has induced the injured person justifiably to rely on its taking action for the benefit of that particular person to his detriment. The test also accommodates existing law reflecting a public policy that the mere existence of rescue services does not, standing alone, impose upon the governmental entity a duty to use them for the benefit of a particular individual . . . . where the governmental entity is aware of the plight of a particular individual and leads that person to believe that governmental rescue services will be used, and the individual detrimentally relies on that promise, it would be unfair to leave that individual worse off than if the individual had not sought assistance from the government at all.

*Id.* at 284–85.

*Mullin* cannot be reasonably interpreted to require that the private/public duty test be applied universally in a mechanistic manner in all cases which may involve the duty owed by a governmental entity. *See id.* at 285 (concurring and dissenting opinion of Justice Dickson). In fact, as stated by our supreme court:

> Noting the nebulous nature of the concept of duty and [the] fact that no universal test for it ever has been formulated, this Court recently observed:

> No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.

*Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 636 (Ind.1991) (quoting *Gariup Constr. Co, Inc. v. Foster*, 519 N.E.2d 1224, 1227 (Ind.1988) which quoted W. Prosser & W. Keeton, *The Law of Torts* § 53, at 359 (5th ed. 1984)).

We have already recognized that the *Mullin* test applies only in determining whether a duty is owed based on a governmental entity's alleged failure to act. *Serviss v. State, Dep't of Natural Resources*, 711 N.E.2d 95, 99 (Ind.Ct.App.1999) (noting that the *Mullin* test will not apply where the plaintiff alleges that the governmental entity engaged in an affirmative act of negligence which created the plaintiff's perilous situation), *trans. pending;* *McCormick v. State, Dep't of Natural Resources*, 673 N.E.2d 829, 838 (Ind.Ct.App. 1996); *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1067 (Ind.Ct.App.1995).

Moreover, just as we cannot expect the private/public duty test to be universally applicable, we cannot expect the dichotomous "affirmative act of negligence/failure to take appropriate action" subset of the *Mullin* test to enjoy universal and mechanistic application. We have noted that the determination of the existence of a governmental duty does not necessarily require that the plaintiff couch his claim in terms of an affirmative act of negligence on the part of the State. *See Serviss*, 711 N.E.2d at 99–100 (holding that the State could properly be held liable for the failure to take adequate safety precautions after permitting plaintiffs to sled on a particular hill); *Kantz v. Elkhart County Highway Dep't*, 701 N.E.2d 608, 611 (Ind.Ct.App. 1998) (holding that a county could properly be held liable for its failure to remove an obstruction that rendered a county road unsafe), *trans. denied; Harkness v. Hall*, 684 N.E.2d 1156, 1161 (Ind.Ct.App.1997) (holding that a county could properly be held liable for its failure to maintain a

roadway and bridge where an accident occurred); *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1068 (Ind.Ct.App. 1995) (holding that a county could properly be held liable for its failure to prevent a ditch from overflowing and its failure to warn property owners of high levels of bacteria).

As noted above, the *Mullin* test was established to address the precise issue of governmental liability for the negligent provision of rescue services; circumstances vastly different from those in the present case and which implicate entirely different policy considerations. Moreover, the *Mullin* test was expressly built on the underpinnings of the three-part balancing test set out in *Webb*, 575 N.E.2d at 995. Thus, the *Mullin* test is derivative of, and in no way supplants, the *Webb* balancing test. In balancing the three factors prescribed by *Webb* in the present case, I would note that: (1) the State operates the Chain–of–Lakes State Park, holds it open to the public, and maintains the playground equipment and swings for its patrons (including the Conners) to use while visiting the park; (2) it is reasonably foreseeable that a park patron will suffer injury should a swing break from not being maintained in a reasonably safe manner; and (3) the public policy concerns weigh in favor of imposing the duty upon the State, who operates the park and maintains the equipment, to maintain the equipment in a reasonably safe condition rather than upon the park patrons who visit the park on a temporary basis and who have every reasonable expectation that playground equipment made available to the public will be maintained in a reasonably safe condition. Therefore, I would hold that, under the present circumstances, the law imposes a duty upon the State to maintain the playground equipment at its park in a reasonably safe condition for the protection of its patrons. Accordingly, I would reverse the trial court's entry of summary judgment.