The ESTATE OF Rebecca Jane TAYLOR by Steven W. TAYLOR, Executor; Steven W. Taylor, Individually; Richard C. Taylor, Individually; and Kent A. Taylor, Individually, Appellants,

v.

MUNCIE MEDICAL INVESTORS, L.P. and Life Care Centers of America, Inc., together d/b/a The Woodlands, Appellees.

No. 18A02–9904–CV–265.

Court of Appeals of Indiana.

April 20, 2000.

George G. Slater, Susan M. Hunter, Slater & Associates, Carmel, Attorneys for Appellant.

Mary K. Reeder, Janelle K. Stehura, Riley Bennett & Egloff, Indianapolis, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

The Estate of Rebecca Jane Taylor, by Steven W. Taylor, executor, and Steven W. Taylor, Richard C. Taylor and Kent A. Taylor, as individuals (collectively, "the Estate"), appeal the trial court's grant of summary judgment in favor of Muncie Medical Investors L.P. and Life Care Centers of America, Inc., together d/b/a as the Woodlands (collectively, "the Woodlands"). The Estate raises two issues, which we restate as:

1) whether the trial court erred when it entered summary judgment on the Estate's claim against the Woodlands for "wrongful prolongation of life;" and

2) whether the trial court erred when it found that there was no dispute of material fact on any of the claims raised by the Estate against the Woodlands.

The Woodlands raises one issue on cross-appeal: whether the Estate has waived all of its claims of error by failing to challenge the trial court's rulings. We affirm.

The relevant facts follow. In 1992, Rebecca Jane Taylor suffered a stroke that left her paralyzed on her left side and confined to a wheelchair. On December 1, 1993, Rebecca executed a living will that directed that if she was suffering from a terminal illness with "no reasonable possibility of recovery," her doctors should not take "extraordinary means" to prolong her life. Second Supp. Record, p. 15. Rebecca executed a power of attorney, which contained no specific provisions with respect to health care, in favor of her son, Steven Taylor, on August 1, 1994. On October 30, 1994, Rebecca entered the Woodlands nursing home, and Dr. Michael Seidle became Rebecca's primary care physician. Subsequently, on December 29, 1994, Rebecca executed a "Do Not Resuscitate" form in which she indicated that she did not wish to receive cardiopulmo-

nary resuscitation in the event that she stopped breathing. Supp. Record, p. 213.

On April 8, 1995, Rebecca suffered a second stroke and was transferred to Ball Memorial Hospital. The second stroke left Rebecca completely paralyzed and comatose, with no hope of recovery. As a result, Rebecca's sons, Steven, Richard and Kent, decided to discontinue providing Rebecca with artificial nutrition, return Rebecca to the Woodlands, and see that she receive only comfort measures until she died.

Rebecca returned to the Woodlands on April 13, 1995. At that time, she was receiving only sugar water and a saline solution through an intravenous line. On April 25, 1995, nurses found that Rebecca was becoming dehydrated and that her veins would no longer support an intravenous line. The Woodlands' staff also noted that Rebecca showed signs of discomfort and responsiveness, including moaning, coughing, pulling her foot away from a needle stick, and opening her eyes. The nurses then called Dr. Seidle, who ordered that they replace the intravenous line with a nasogastric tube and begin feeding her Jevity, a water-based caloric supplement, subject to obtaining the consent of a family member. Jevity has five times the caloric content of the sugar and saline solution that Rebecca had been receiving through the intravenous line. As a result, Jevity can keep recipients alive for a longer period of time than the sugar and saline solution.

After receiving the order from Dr. Seidle, Woodlands' employee, Nurse Rebecca Vickery, set about contacting family members on that same day in order to get a family member's consent to insert the nasogastric tube. Vickery first tried to contact Steven, who had Rebecca's power of attorney, but he was at work so she spoke instead to his wife, Dee. Dee did not want to make a decision about the nasogastric tube without talking to Steven, and she told Vickery that she would contact Steven at work, as well as Steven's brother Rich-

ard, and call her back with a decision. Nevertheless, Vickery then called Richard directly and asked him to consent to the use of the nasogastric tube. After Vickery told Richard that his mother's veins were collapsing and that a "dry death" was terrible, he gave his consent to prevent Rebecca from suffering. Supp. Record, pp. 59–60. While Vickery and Richard were conversing, Dee called Steven, who rejected the proposed nasogastric tube because he thought it would unnecessarily prolong Rebecca's life in a comatose state. Dee subsequently called the Woodlands and told them not to go forward with Dr. Seidle's orders.

When Dr. Seidle called the Woodlands that evening, he broke the impasse created by the sons' orders by telling the nurses to insert the feeding tube. Dr. Seidle told the nurses that if one son consented, as Richard had, then they had sufficient permission to go ahead with the procedure. The nasogastric tube was placed later that night, and Rebecca began receiving Jevity.

After this incident, Steven met with Dr. Jose Valena on June 7, 1995, and hired him to replace Dr. Seidle as Rebecca's primary care physician. Dr. Valena told Steven that he would monitor Rebecca's condition for a month and then order the Woodlands to change Rebecca's diet from Jevity to just water if she did not improve. However, on July 10, 1995, Dr. Valena ordered the Woodlands to increase, not decrease, Rebecca's caloric intake without informing Rebecca's family. Meanwhile, on July 13, 1995, Steven obtained a guardianship over Rebecca. Dee spoke with Dr. Valena on August 31, at which time he told her that he had ordered an increase in Rebecca's caloric intake on July 10. On Sept. 11, 1995, the Taylor family removed Rebecca from the Woodlands and took her to Ball Memorial Hospital, where she died on September 21, 1995.

On February 6, 1996, the Estate filed suit against the Woodlands, alleging gross negligence, negligence, violation of Ind.

Code §§ 16–36–1–1 to 16–36–1–14 and Ind. Code §§ 16–36–4–1 to 16–36–4–21, battery, failure to seek a guardian ad litem, violation of Rebecca's federal and state "right to liberty and self-determination," violation of the Federal Nursing Home Reform Law, fraudulent misrepresentation, constructive fraud, intentional infliction of emotional distress, and breach of contract. Record, pp. 14–24. The Woodlands moved for summary judgment, and the trial court granted the Woodlands' motion on all of the Estate's claims and issues.

Our standard of review for appeals from summary judgment is well settled. When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 632–633 (Ind.1991). A summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 633. Any doubt as to the existence of a factual issue should be resolved against a moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Id.* Summary judgment may be proper when there is no dispute regarding a fact that is dispositive of the action. *Id.* In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment. *Id.* The party moving for summary judgment must shoulder the burden of establishing the lack of a material factual issue. *Id.* Once the movant has met this burden, the opposing party is obliged to present sufficient evidence to show the existence of a genuine triable issue. *Id.* The opposing party's obligation does not arise until after the movant has shown that he or she is entitled to summary judgment. *Id.*

■ In this case, the trial court entered findings of fact and conclusions of law sua sponte. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Trout v. Buie,* 653 N.E.2d 1002, 1005 (Ind.Ct.App.1995), *trans. denied.* However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

I.

■ We first address the waiver claim raised by the Woodlands on cross-appeal because the claim, if successful, would end the parties' dispute. The Woodlands argues that the Estate has waived all of its claims of error by failing to challenge the trial court's disposition of all of its claims. When an appellant fails to raise and argue in his or her appellant's brief a cause of action disposed of below, he or she waives the right to challenge the trial court's disposition on appeal. *J.A.W. v. Roberts,* 627 N.E.2d 802, 808 n. 4 (Ind.Ct.App.1994).

In this case, we find no waiver because the Estate properly presented its claim for tortuous prolongation of Rebecca's life, the trial court addressed that claim, and the Estate is challenging the trial court's judgment on that issue in this appeal. In its complaint, the Estate asserted that the Woodlands "fraudulently, negligently, and/or intentionally placed a nasogastric tube into Rebecca Jane Taylor's stomach," that "as a direct and proximate result of the fraudulent, negligent and/or intentional acts of the Woodlands ..., Rebecca Jane Taylor's death was delayed for approximately 140 days," and that the Estate suffered damages from the delay in Rebecca's death and the deprivation of Rebecca's "right to determine what was done to her body." Record, pp. 18–19. In its findings and conclusions, the trial court determined that the Woodlands was "entitled to judgment as a matter of law on [the Estate's] claims that [t]he Woodlands ... breached its duties to follow Mrs. Taylor's express wishes." Record, p. 431. The trial court

also determined that "[t]he Woodlands did not breach any duty to Mrs. Taylor by conferring with her eldest son about the placement of a [nasogastric] tube...." Record, p. 432. In the appellants' brief, the Estate argues:

> "the Taylors are merely arguing that they should have been allowed their existing rights under Indiana law. These existing rights include the right to determine the plan of treatment for their mother, based upon her expressed wishes and in consultation with physicians following her second major stroke, and to have that plan of treatment supported by the health care facility after their indication of agreement with that plan."

Appellants' Brief, pp. 14–15. Consequently, the Estate is challenging the trial court's determination that the Woodlands did not breach its duty to obey the wishes of Rebecca and her family, thereby prolonging Rebecca's life in a comatose state. Furthermore, the Estate argues that there are two disputes of material fact which are relevant to the Estate's appeal: whether Rebecca's son Richard consented to the feedings of Jevity, and whether Rebecca's sons ordered the Woodlands to remove the nasogastric tube once it was installed. Therefore, the Estate has properly raised its allegations of error and this claim of waiver is without merit.

## II.

The first issue raised by the Estate is whether the trial court erred when it entered summary judgment on the Estate's claim for "wrongful prolongation of life." The Estate argues that, although no Indiana courts have directly addressed the issue, it is logical for Indiana to adopt a tort for wrongful prolongation of life. If Indiana does not do so, then the Estate concludes that there is no enforcement mechanism to protect a patient's right to refuse medical treatment and a family's right to make medical decisions for incapacitated relatives.

The Woodlands raises a second assertion of waiver against this claim. Specifically, the Woodlands claims that the Estate told the trial court that it was not pursuing a "wrongful living" case against the Woodlands, and that the Estate's disclaimer waived any right to review of this specific claim. Appellee's Brief, pp. 18–19. In response, the Estate argues that its claim for wrongful prolongation of life is a different claim than a claim for wrongful living, and that it properly presented the issue to the trial court.

■ A party may not assert one theory at the summary judgment stage of the proceeding and assert another theory on appeal. *Southern Ind. Health Operations, Inc. v. George,* 696 N.E.2d 476, 480 n. 4 (Ind.Ct.App.1998), *reh'g denied, trans. denied,* 706 N.E.2d 182. However, we agree with the Estate that it properly presented this issue to the trial court. As discussed above, the Estate did clearly state in its complaint that it was raising a tort claim based upon the Woodlands' alleged breach of its duties to respect Rebecca's wishes and avoid unnecessarily prolonging her life. *See supra Part I.* Furthermore, during the summary judgment hearing, the Estate also stated, "[t]his is in no way a wrongful living case. This is not a case of wrongful life, it's a case of deprivation of Mrs. Taylor's rights,...." Record, p. 472. In addition, in its brief in support of its motion for summary judgment, the Woodlands described its own understanding of the Estate's claim as a "breach [of the Woodlands'] common law duty not to institute and maintain tube feedings against Rebecca Jane Taylor's wishes and the wishes of her family." Record, p. 184. Therefore, the Woodlands had sufficient notice and understanding of the Estate's claim to defend against it at the summary judgment stage. Consequently, the Estate has not waived its claim for wrongful prolongation of life, and we address it on the merits.

The Estate asserts that the "rights" of families to make health care decisions cre-

ated by the Health Care Consent Act, Ind.Code §§ 16–36–1–1 to 16–36–1–14 (formerly codified at Ind.Code §§ 16–8–12–1 to 16–8–12–13), and recognized by our supreme court in *Lawrance* are meaningless without a remedy to enforce them. *In re Lawrance,* 579 N.E.2d 32 (Ind.1991). Consequently, the Estate concludes that families must have the right to file suit against health care providers, either before or after the incapacitated patient has died, in order to protect their decisionmaking authority.

■ In *Lawrance,* the parents of a daughter who had lapsed into an incurable, persistent vegetative state asked a trial court to grant them the authority to end all nutrition and hydration for their daughter. *See id.* at 35. The daughter's health care providers did not oppose the parents' petition and were willing to comply with the court's decision. *See id.* at 36. Our supreme court determined that the Health Care Consent Act was designed to operate without court proceedings "where none of the interested participants disagree." *Id.* at 41. Consequently, because all parties were in agreement with the parents' decision, the court determined that the parents were not required to seek a court declaration that they were authorized to end hydration and nutrition treatments. *Id.* at 43. When health care providers and family members disagree as to the proper course of medical treatment, they have the statutory right to go to court to resolve the dispute as set forth in Ind.Code § 16–36–

1–8.[1] *See Lawrance,* 579 N.E.2d at 43 (discussing Ind.Code § 16–36–1–8 (formerly codified as Ind.Code § 16–8–12–7)).

■ Applying *Lawrance* to the instant case, we hold that there is no need to recognize a new cause of action for wrongful prolongation of life because the procedure set forth in I.C. § 16–36–1–8 and discussed in *Lawrance* already adequately protects the rights and interests of patients, their families and their health care providers, and could have protected the rights of Rebecca and her family here. While Rebecca was being treated at the hospital for her second stroke, her sons and her hospital physicians agreed to provide only comfort measures and to let her die naturally. However, after the nasogastric tube was placed according to Dr. Seidle's orders, and disagreements arose among Rebecca's sons and the Woodlands' employees as to whether installing the tube was a proper form of treatment, the prior agreement between the family and medical providers at the hospital was obviously no longer valid. After the tube was placed, Rebecca's family had the right to go to court and seek to challenge the decisions and actions of Dr. Seidle and the Woodlands. *See Lawrance,* 579 N.E.2d at 43. However, instead of pursuing relief in court or moving Rebecca to another facility, Rebecca's family chose to replace Dr. Seidle with Dr. Valena.

The family and Dr. Valena appeared to have reached an agreement upon a course

---

1. I.C. § 16–36–1–8 provides, in relevant part:
   (a) A health care provider or any interested individual may petition the probate court in the county where the individual who is the subject of the petition is present for purposes of receiving health care to:
   (1) make a health care decision or order health care for an individual incapable of consenting; or
   (2) appoint a representative to act for the individual.
   \* \* \* \* \*
   (d) The probate court may order health care, appoint a representative to make a health care decision for the individual incapable of consenting to health care with the limita-

tions on the authority of the representative as the probate court considers appropriate, or order any other appropriate relief in the best interest of the individual if the probate court finds the following:
   (1) A health care decision is required for the individual.
   (2) The individual is incapable of consenting to health care.
   (3) There is no individual authorized to consent or an individual authorized to consent to health care:
   (A) is not reasonably available;
   (B) declines to act; or
   (C) is not acting in the best interest of the individual in need of health care.

of treatment for Rebecca, but Dr. Valena subsequently increased Rebecca's nutritional feedings without the family's knowledge or consent.[2] When Rebecca's family discovered that Dr. Valena had not acted in accordance with their agreement, they indisputably could have gone to court to challenge Dr. Valena's decision. *See id.* However, Rebecca's family rather chose to remove her from the Woodlands and seek new physicians. Because the family could have challenged the actions of Rebecca's physicians and the Woodlands in court at any time to enforce their decisions regarding Rebecca's care, we cannot say that the Estate lacked means to enforce their decisions in regard to medical treatment. *See id.* Consequently, we decline to adopt a new cause of action for wrongful prolongation of life, and we find no error in the trial court's judgment on this point.

### III.

The second issue raised by the Estate is whether the trial court erred when it found that there was no dispute of material fact on any of the claims raised by the Estate. The Estate claims that there are two disputes of material fact that preclude the entry of summary judgment: whether Richard Taylor consented to feeding Jevity to Rebecca, and whether any of Rebecca's sons asked the Woodlands to remove the nasogastric tube after it had been put into place. We will address each point in turn.

### A.

■ The Estate argues that materials designated to the trial court create a dispute of fact as to whether Richard was told that Rebecca would receive Jevity and what the implications of receiving Jevity were. However, in its brief the Estate has not cited to any of the materials that were designated to the trial court to support its assertion. In fact, it has provided no cita-

tions to the record in support of this claim. On review of summary judgment, we will not search through the record to determine if a material dispute of fact exists. *See American Management, Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 429 (Ind.Ct. App.1996). Therefore, the Estate has waived its challenge to this claim of error. *See Tipmont Rural Elec. Membership Corp. v. Fischer,* 697 N.E.2d 83, 93 (Ind. Ct.App.1998), *aff'd,* 716 N.E.2d 357 (holding that the appellant had waived a claim for review by failing to cite to the record and relevant authority).

■ Waiver notwithstanding, the trial court did not err. A fact is material if it is dispositive of the litigation. *Conwell v. Beatty,* 667 N.E.2d 768, 774 (Ind.Ct.App. 1996), *reh'g denied.* Here, whether Richard understood the ramifications of feeding Jevity to Rebecca is not dispositive because the claim upon which the Estate's alleged dispute of fact is based is without merit. The Estate argues that the "feeding of Jevity ... prolonged Rebecca Jane Taylor's life and ... is the basis of the Taylors' claim." Appellants' Brief, p. 18. Furthermore, the dispute as to whether Richard's consent to the Jevity was informed "is the very basis of the Taylors' claim." Appellants' Brief, p. 19. As discussed above, the Estate's claim for wrongful prolongation of life is invalid because an existing statutory remedy already protects patients' rights to refuse medical treatment and gives families the power to enforce those rights. *See supra* part II. Because the claim is invalid, any disputes of fact in regards to that claim are immaterial. In addition, the Estate has not argued or demonstrated that the question of whether Richard's consent was informed is relevant to any other claim set forth in its complaint. Therefore, because the dispute as to whether Richard validly con-

---

2. We note that the Estate's appeal of the trial court's entry of summary judgment in favor of Dr. Seidle and Dr. Valena has been assigned to another panel of this court. We express no opinion upon the questions presented in that appeal or the actions undertaken by either physician. Instead, we merely review the facts in the record before us in the light most favorable to the nonmovant, the Estate. *See Cowe,* 575 N.E.2d at 633.

sented to the Jevity feedings is not a dispute of material fact, we find no error on this point. *See, e.g., Conwell,* 667 N.E.2d at 774–775 (affirming trial court's entry of summary judgment where the appellant's claimed disputes of fact were immaterial).

### B.

■ Turning to the Estate's second asserted dispute of material fact, namely whether the Taylor family asked the Woodlands to remove the nasogastric tube, the Woodlands argues that there is no dispute of material fact on this issue because the Estate has failed to cite to any disputed evidence that was properly designated to the trial court. We cannot reverse a grant of summary judgment on grounds that there is a dispute of material fact "unless the material fact and the evidence relevant thereto ... have been specifically designated to the trial court." Ind. Trial Rule 56(H). "At the time of filing the motion [for summary judgment] or response, a party shall designate to the court *all parts* of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for the purposes of the motion." Ind. Trial Rule 56(C) (emphasis added). As a general rule, designating pleadings, discovery materials, and affidavits in their entirety will fail to meet the specificity required by T.R. 56(C). *Abbott v. Bates,* 670 N.E.2d 916, 922 (Ind.Ct. App.1996), *reh'g denied.*

In the instant case, the Estate cites to the depositions of Steven Taylor and Dee Taylor to support its claim that there was a dispute of material fact. However, in its designation of materials to the trial court, the Estate simply listed those depositions without identifying what parts of those depositions it relied upon. In addition, the Estate did not discuss or provide citation to either deposition in its brief opposing the Woodlands' motion for summary judgment. Consequently, those depositions were not properly designated to the trial court. *See* T.R. 56(C); *Rosi v. Business*

*Furniture Corp.,* 615 N.E.2d 431, 434–435 (Ind.Ct.App.1993). Because those depositions were not specifically designated to the trial court, we cannot consider them on appeal. *See* T.R. 56(H); *Bankmark of Florida, Inc. v. Star Fin. Card Serv., Inc.,* 679 N.E.2d 973, 980 (Ind.Ct.App.1997). Because the Estate has cited no other evidence to support its claim, it has failed to create a dispute of material fact, and the trial court did not err in granting summary judgment. *See, e.g., Abbott,* 670 N.E.2d at 924 (affirming the trial court's entry of summary judgment on the appellant's defense of duress because the appellant failed to properly designate any evidence to the trial court on that issue).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

RILEY, J., and KIRSCH, J., concur.