Marshall JACKSON, Appellant–Defendant,

v.

Jeffrey A. WRIGLEY, Appellee–Plaintiff.

No. 33A01–0909–CV–452.

Court of Appeals of Indiana.

Feb. 10, 2010.

Marshall Jackson, New Castle, IN, Appellant pro se.

Bruce B. Paul, Jeffersonville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Marshall Jackson appeals the trial court's grant of summary judgment in favor of Defendant–Appellee Jeffery A. Wrigley. We reverse and remand.

### ISSUES

Jackson raises two issues for our review, which we restate as:

I. Whether the trial court erred in determining that Wrigley met his burden of showing that there was no genuine issue of material fact regarding whether Jackson exhausted his administrative remedies.

II. Whether summary judgment was the proper vehicle for deciding this case.

### FACTS AND PROCEDURAL HISTORY

Jackson is incarcerated at the New Castle Correctional Facility ("New Castle"), where Wrigley is the superintendent. Jackson filed a § 1983 civil rights lawsuit seeking a declaration that Indiana's offender visitation policy is unconstitutional because New Castle and other Indiana prison facilities permanently barred Jackson's fiancee from entering an Indiana prison facility after she was caught trafficking contraband. Jackson sought to convince the facility to interpret the policy in a manner that allowed his fiancee to visit the facility for a marriage ceremony.

Wrigley filed a motion for summary judgment, which the trial court granted. In short, the trial court deemed that there was no genuine issue of material fact on the issue of whether Jackson exhausted his administrative remedies through timely compliance with the Offender Grievance Process ("OGP").[1] Jackson now appeals.

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Jackson contends that the trial court erred in granting Wrigley's summary judgment motion. He argues that there is a material issue of fact concerning whether he exhausted his administrative remedies and/or whether he was prevented by prison officials from doing so.

In *Higgason v. Stogsdill*, 818 N.E.2d 486, 489 (Ind.Ct.App.2004), we acknowledged that the procedural aspects of § 1983 claims made in both federal and state courts are controlled by the Prison Litigation Reform Act (the "PLRA"), and that the PLRA requires prisoners to exhaust "such administrative remedies as are available" before filing § 1983 claims. *See* 42 U.S.C. § 1997e(a). Federal law controls the treatment of § 1983 claims, and the Supremacy clause of the United States Constitution preempts any state laws or rules that inhibit the prosecution thereof. *Higgason*, 818 N.E.2d at 490. The United States Supreme Court has held that the PLRA applies even where the administrative remedy available does not match the offender's desired relief. *Booth v. C.O. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Proper exhaustion "demands compliance with an

---

1. A detailed explanation of the OGP is given below.

agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the court of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). The benefits of exhaustion are realized when the prison grievance system is given a fair opportunity to consider the grievance after the grievant complies with all of the system's critical procedural rules. *Id.* at 95, 126 S.Ct. 2378.

The administrative remedies available in this case are outlined in the Department of Correction's twenty-eight page OGP found in its "Policy and Administration Procedures: Manual of Policies and Procedures." The OGP was included as an attachment to Wrigley's summary judgment motion, and its salient provisions are stated in the following paragraphs.

All Indiana state correctional facilities require offenders to comply with the OGP when the offender wants to express complaints about decisions made by the facility. Under the OGP, an offender must first attempt to resolve issues informally within five days of the incident (here, the denial of visitation) by discussing it with his counselor or another staff member in the housing unit "who may be able to assist in the resolution of the problem." (Appellee's App. at 101). If the grievance cannot be resolved by the counselor or staff member "within ten working days, the offender shall be permitted to initiate a formal written grievance." *Id.* at 102. The inmate "shall file such grievance within [twenty] working days from the date of the incident triggering the grievance." *Id.*

All formal grievances submitted by offenders "are to be forwarded to the Executive Assistant as soon as possible." *Id.* at 104. Upon receipt of the grievance, the Executive Assistant or designee is to log the grievance and assign a case number. *Id.* at 104. Additionally, the Executive Assistant "shall generate a receipt for the grievance and shall return the receipt to the offender within one (1) working day from the date the grievance is logged." *Id.* The Executive Assistant "shall have [fifteen] working days from the date that the grievance is received to complete the investigation of the grievance and provide a response to the offender." *Id.* at 106. The response must be written, signed, and dated, and, absent the grant of an extension, must be returned to the offender within fifteen days from the date of receipt. *Id.* at 107.

If the offender determines that the grievance response is unsatisfactory, he "shall be permitted to appeal the grievance to the Department's Department Offender Grievance Manager. . . ." *Id.* The appeal must be filed within ten working days of the date of the receipt of the grievance response; however, "[t] his time frame may be waived by the Department Offender Grievance Manager if it is determined that there are any valid reasons to do so." *Id.* at 108. The appeal must be filed with the Executive Assistant, "who shall indicate the date received and shall generate a receipt for the appeal." *Id.* at 108. The Executive Assistant "shall log the appeal," and if all pertinent information is included, the Executive Assistant "shall scan all of the pertinent information relating to the grievance and appeal into his/her computer and send all of the information to the Department Offender Grievance Manager via e-mail." *Id.* The Executive Assistant is to complete these actions within five working days of receipt of the appeal. *Id.* The Department Offender Grievance Manager "shall complete his/her investigation and submit a response to the appeal within [twenty] working days from the date of receipt, unless the Department Offender

Grievance Manager notifies the offender and the facility housing [of] the offender in writing that the appeal will take additional time to complete." *Id.* at 109.

Wrigley moved for summary judgment on the grounds that Jackson failed to timely comply with the OPR. On appeal, Wrigley argues that Jackson's amended complaint did not state what steps he took to file his grievance and appeal an adverse response. Wrigley also argues that after he filed his summary judgment motion and attachments, Jackson responded that he gave his grievance appeal to a library worker (an accepted procedure within the New Castle facility) but he did not indicate when he did so.

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner,* 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. Ind.Trial Rule 56(C); *Campbell v. Criterion Group,* 613 N.E.2d 423, 428 (Ind. Ct.App.1993), *on reh'g* 621 N.E.2d 342. Once the moving party makes a prima facie showing of the nonexistence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell,* 613 N.E.2d at 428.

In most, if not all federal circuits, failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead, unless the failure to exhaust is readily apparent or unambiguously established from the face of the record. *See e.g., Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir.2005) (holding that exhaustion is an affirmative defense that the defendants have the burden of pleading and proving); *Ray v. Kertes,* 285 F.3d 287 (3d Cir.2002) (joining the Second, Seventh, Ninth, and D.C. Circuits in holding that the exhaustion requirement must be raised as an affirmative defense). In bringing an action challenging prison conditions, an offender is not required in his pleading to demonstrate compliance with the administrative exhaustion requirement imposed by the PLRA. *Ray,* 285 F.3d at 297.

■ In the present case, Jackson was not required to demonstrate administrative exhaustion in his amended complaint. Because the issue was not clear on the face of the pleadings, Wrigley, as the person asserting the affirmative defense, had the burden of proving lack of administrative exhaustion. Only then would the burden shift under Indiana Trial Rule 56 to require Jackson to show that a genuine issue of material fact existed on the issue. *See Huff v. Huff,* 892 N.E.2d 1241, 1246 (Ind. Ct.App.2008), *revised on rehearing on separate issues,* 895 N.E.2d 407 (2008) (holding that when a party moving for summary judgment asserts an affirmative defense and establishes that defense, the burden shifts to the nonmoving party to establish an issue of fact material to a theory that avoids the affirmative defense).

■ Our review of the record discloses that Wrigley designated the OGP to show the administrative procedure that governed Jackson's challenge of New Castle's decision. Wrigley also attached and designated the affidavit of David Ittenbach, New Castle's grievance manager. In the affidavit, Ittenbach averred that from his review of Jackson's grievance records he had concluded that "[a]lthough Inmate Jackson filed a grievance requesting that he be permitted to marry, he did not take the appropriate steps in accordance with the [OGP] to appeal New Castle's denial of his grievance." (Appellee's App. at 85). The affidavit did not state what material

contained in the grievance records caused Ittenbach to reach his conclusion. Indeed, it appears that when Wrigley filed his summary judgment motion, he believed that Jackson bore the burden of proof on the issue of exhaustion of remedies.

 Jackson responded to Wrigley's summary judgment motion with an affidavit claiming his compliance with the grievance procedure by placing his grievance in the hands of a mailroom employee. Jackson also attached the mailroom employee's response that "I process thousands of pieces of mail daily. If you gave me mail in the library, I would have placed it in the tote and handed it off to my clerk that processes outgoing mail. I'm sure your mail to Mr. Ittenbach was placed in his box." (Appellee's App. at 187).

It is not clear from the designated evidence whether Jackson failed to exhaust his administrative remedies in a timely manner or whether he was prevented from doing so by a glitch in New Castle's procedure. The OGP indicates that receipts, copies of receipts, the prison log, and e-mails should be available to establish which of these circumstances occurred. It is clear that the evidence designated in support of New Castle's summary judgment motion leaves us with a genuine issue of material fact and that the trial court erred in granting summary judgment on this issue. *See generally, Dole v. Chandler*, 438 F.3d 804 (7 Cir.2006) (holding that the district court erred in granting summary judgment on an exhaustion of administrative remedies when the prison's procedures were defective).

## II. PROPRIETY OF SUMMARY JUDGMENT

Jackson contends that summary judgment is an inappropriate vehicle to dispose of this case. He bases his contention on his belief that the proper vehicle is dismissal for lack of subject matter jurisdiction. Because this issue may come up on remand, we address it in this appeal.

 The exhaustion of administrative remedies requirement under the PLRA is not jurisdictional. *Woodford*, 126 S.Ct. at 2392; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Because the trial court considered matters outside the pleadings, even if Wrigley would have filed a motion to dismiss, it would have been treated as a motion for summary judgment. *See Pallett v. State*, 901 N.E.2d 611, 613 (Ind.Ct. App.2009), *trans. denied.*

### CONCLUSION

Because there is a genuine issue of material fact as to whether Jackson exhausted his administrative remedies, we reverse and remand for further proceedings.

ROBB, J., and BROWN, J., concur.