# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**JAMES E. AYERS**
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEES:

Brad Crain and Richard Redpath

**BRUCE D. LACONI**
**SEAN M. CLAPP**
Clapp Ferrucci
Fishers, Indiana

BioSAFE Engineering, LLC

**THOMAS G. BURROUGHS**
**MICHAEL W. HILE**
**RONALD G. SENTMAN**
Katz & Korin, PC
Indianapolis, Indiana

FILED

Jun 18 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DON MORRIS and RANDY COAKES, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1109-PL-414 |
| | ) | |
| BRAD CRAIN, RICHARD REDPATH, | ) | |
| BIOSAFE ENGINEERING, LLC, | ) | |
| STEVE BIESECKER, TYLER JOHNSON, | ) | |
| BRANDON ROSS and CHRIS SOLLARS, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Jeffrey V. Boles, Judge
Cause No. 32C01-1003-PL-12

**OPINION - FOR PUBLICATION**

BAILEY, Judge

## Case Summary

Appellants-Plaintiffs Donald Morris ("Morris") and Randy Coakes ("Coakes") appeal the grant of summary judgment in favor of Appellees-Defendants Brad Crain ("Crain"), Richard Redpath ("Redpath"), and BioSafe Engineering, LLC ("BioSafe")[1] upon breach of contract and equitable claims.[2] They present a single, consolidated issue: whether the defendants demonstrated their entitlement to summary judgment.[3] We reverse.

## Facts and Procedural History

The facts most favorable to Morris and Coakes, the non-movants for summary

---

[1] On July 28, 2011, consistent with the agreement reached by the parties at the summary judgment hearing, the trial court dismissed defendants Steve Biesecker, Tyler Johnson, Brandon Ross, and Chris Sollars. (App. 8.)

[2] The Amended Complaint sought a declaratory judgment regarding ownership of BioSafe as well as the appointment of a receiver and an accounting of funds. The averments of the Amended Complaint included allegations of fraud; additionally, the Plaintiffs contended "this case is also brought as a derivative action to establish, fix, and determine the rights of the LLC for recoupment from Brad Crain and Richard Redpath and disgorgement by Defendants to the LLC of any benefits, property, or funds received improperly." (App. 15.) However, after the summary judgment hearing, the trial court ordered the plaintiffs to clarify, in writing, the causes of action upon which they were proceeding. The plaintiffs responded that their theories of recovery were breach of contract, unjust enrichment, and estoppel. (App. 171.)

[3] Morris and Coakes have also strenuously argued that the BioSafe operating agreement should be stricken as a "false document." Appellants' Brief at 6. However, Morris and Coakes have abandoned any shareholder derivative claim and do not contend that they are actually members holding shares of record. Rather, they claim an equitable, as opposed to legal, interest. They contend an oral contract was breached and the defendants were unjustly enriched precisely because Crain and Redpath formed an LLC without regard to the plaintiffs' contract rights and contributions. The operating agreement, naming only Crain and Redpath, is support for the proposition that Morris and Coakes were excluded. It is accordingly unclear how admission of the document is prejudicial to them. Nonetheless, Morris and Coakes concede that the operating agreement was admissible evidence, if only for a limited purpose. Appellants' Brief at 6. Essentially, Morris and Coakes concede the authenticity of the document (but challenge the date of signature), as the plaintiffs have alleged that Crain and Redpath in fact established themselves as 50/50 members of BioSafe, albeit wrongfully.

2

judgment, are as follows. In 2006, Morris was employed by Waste Recovery, which provided biological effluent destruction systems products.[4] When it became apparent that the company was insolvent, Morris approached Redpath in regard to forming a new company to "take control of the niche industry." (App. 78.) On November 15, 2006, Waste Recovery ceased doing business; Morris paid a rent installment and agreed to execute a five-year lease for the premises previously occupied by Waste Recovery. He initiated remodeling of the premises and began to investigate financing.

Later in November, Crain, Coakes, Redpath, and Morris conducted a conference call regarding the new business. Morris and Coakes drafted a spreadsheet of proposed ownership shares (45% to Morris, as President, 25% and 20% to Crain and Redpath, respectively, as Vice-Presidents, and 2% each to Coakes, Biesecker, Johnson, Ross, and Sollars). After negotiation, the shares allocation was changed to 40% for Morris, 30% for Crain, and 20% for Redpath (with the others retaining 2% each).

Marketing materials were distributed indicating that Redpath, Morris, and Crain were "principals" of BioSafe. (App. 103.) Nonetheless, in January of 2007, Articles of Organization for BioSafe were filed with the Indiana Secretary of State, indicating that Crain and Redpath were the sole members, each having 50% ownership.

In August of 2007, Crain advised Morris that a building in Brownsburg had been leased in anticipation of acquiring Waste Recovery assets. The following month, Morris asked Crain about signing to purchase Waste Recovery assets, and was told that Crain and

---

[4] Apparently, the products were used in management of animal carcasses.

Redpath had been representing that they were each 50/50 owners. Later that month, BioSafe successfully bid for the assets of Waste Recovery. Redpath advised Morris that new investors now owned 50% of BioSafe.

The new owners of record were Justin Bisland ("Bisland") and LPM Investments, LLC. In October of 2007, Bisland came into the BioSafe offices and fired Morris. Morris was unable to locate the electronic document he had drafted with regard to shared ownership; he reached the conclusion that it had been deleted from the company files.[5]

On March 5, 2010, Morris and Coakes filed their complaint. An amended complaint asserted that Morris and Coakes had equitable interests and contractual rights in BioSafe and that they had standing to bring a shareholder derivative action.[6] They sought the appointment of a receiver, an accounting and disgorgement of funds, and BioSafe's dissolution. The defendants answered, denying that Redpath and Crain had created a false document, made false representations, brought about the plaintiff's ouster, diverted funds, or met with Morris to discuss ownership participation. The defendants also denied that Morris and Coakes held an equitable interest, or that they had standing to bring a shareholder derivative claim.

On February 8, 2011, the majority of the defendants moved for summary judgment; Crain and Redpath subsequently joined in the motion. The parties made their respective designations of materials. The trial court conducted a hearing on July 26, 2011, at which argument of counsel was heard. BioSafe's counsel argued that the shareholder derivative

---

[5] There is no indication of record that Morris and Coakes sought e-discovery (discovery of electronically stored information).

[6] See Ind. Code § 23-18-8-1 providing that an action on behalf of a limited liability company may be brought only by a member or manager of such company (where the organizational document so provides).

claims were unfounded or, at a minimum, were premature, and that the case distilled to "a case of an oral contract at best between Mr. Crain and Mr. Redpath and Mr. Morris and Mr. Coakes … of dubious merit." (Tr. 17.) Counsel for Crain and Redpath argued that there had, at most, been discussion about a business yet to be formed, "an offer that was never accepted." (Tr. 18-19.)

On the following day, the trial court issued an order dismissing defendants Biesecker, Johnson, Ross, and Sollars and ordering the remaining parties to submit documents:

1.    Plaintiffs, within ten (10) days, must file with the Court a document stating with specificity the legal theories the Plaintiffs assert against the Defendants.
2.    Within ten (10) days thereafter, the Defendants must file a document stating with specificity the legal elements of the Plaintiffs theories that the Defendants assert have not been met.

(App. 170.) On August 8, 2011, Morris and Coakes submitted a document indicating that their theories of recovery were breach of contract, unjust enrichment, and estoppel. Crain and Redpath jointly, and BioSafe separately, submitted "statements of elements not met by plaintiffs." (App. 174, 177.)

On August 19, 2011, the trial court granted summary judgment to all defendants in an order providing in pertinent part:

Plaintiff's theory is in contract. The Defendant's Statement of Elements Not Met of Defendants Biosafe Engineering LLC, Steve Biesecker, Tyler Johnson, Brandon Ross and Chris Sollars correctly sets out the current state in the law regarding Plaintiffs['] complaint.
Based upon application of the law to the facts of this case at this pleading stage, the court must GRANT the Defendant's Motion for Summary Judgment for the reasons set out in the Statement of Elements Not Met filed 8-16-11 and enters Summary Judgment on behalf of the Defendants and against the Plaintiffs. There is no reason for any delay in this Order.

5

(App. 180-81.)  This appeal ensued.

## Discussion and Decision

Indiana Trial Rule 56 provides that summary judgment shall be rendered "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue.  Huntington v. Riggs, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), trans. denied.

The party moving for summary judgment bears the burden of establishing the lack of a material factual issue and, once the movant has met this burden, an opposing party is obliged to disgorge sufficient evidence to show the existence of a genuine triable issue.  Cowe by Cowe v. Forum Group, Inc., 575 N.E.2d 630, 633 (Ind. 1991).  The opposing party's obligation does not arise until after the movant has shown entitlement to summary judgment. Id.

"In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment." Id.  The trial court may consider only properly designated evidence when deciding a motion for summary judgment.  Kronmiller v. Wangberg, 665 N.E.2d 624, 627 (Ind. Ct. App. 1996), trans. denied.

In reviewing a trial court's ruling on summary judgment, we stand in the shoes of the trial court, and apply the same standards in deciding whether to affirm or reverse summary judgment. Warren v. Warren, 952 N.E.2d 269, 272 (Ind. Ct. App. 2011). We consider all of the designated evidence in the light most favorable to the non-moving party. Indiana Regional Recycling, Inc. v. Belmont Indus., Inc., 957 N.E.2d 1279, 1282 (Ind. Ct. App. 2011). The party appealing the grant of summary judgment bears the burden of persuading us that the trial court's ruling was improper. Id.

The theories of recovery before the trial court were those of breach of contract, unjust enrichment and equitable estoppel. According to Morris and Coakes, an oral contract was formed when the parties agreed to form a limited liability organization to meet the market opportunity presented by Waste Recovery's demise. It is claimed that Crain and Redpath took benefits conferred by Morris but excluded Morris (and Coakes) from participation in BioSafe's formation and revenue.

The existence of a contract is a question of law. Batchelor v. Batchelor, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006). The basic requirements are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." Id. However, the intention of the parties to a contract is a factual matter which must be determined from all the circumstances. Zimmerman v. McColley, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005).

Unjust enrichment occurs when a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991). The

7

benefit must be one that the defendant impliedly or expressly requested. Coleman v. Coleman, 949 N.E.2d 860, 867 (Ind. Ct. App. 2011).

Equitable estoppel is grounded on the underlying principle that one who by deed or conduct induces another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. Brown v. Branch, 758 N.E.2d 48, 52 (Ind. 2001). The basis for equitable estoppel is actual or constructive fraud by the person estopped. Paramo v. Edwards, 563 N.E.2d 595, 598 (Ind. 1990). Constructive fraud arises by operation of law from conduct which, if sanctioned by law, would secure an unconscionable advantage. Id.

The trial court ordered the defendants to identify how the plaintiffs had failed to meet the elements of the plaintiffs' specified claims. This effectively challenged the plaintiffs to establish each of their claims in order to withstand summary judgment.[7] Indeed, as there had been no trial of issues, the documents purporting to "state elements not met" necessarily assumed that all factual disputes had been resolved in the defendants' favor.[8] The focus upon

_____

[7] Arguably, the post-hearing order also did not give the defendants a fair opportunity to establish their entitlement to summary judgment through properly designated materials. The order did not limit the causes of action to those of the complaint or those addressed at the summary judgment hearing. In other words, it allowed the plaintiffs to clear up any perceived misunderstandings as to their legal theories after the time for summary judgment designations had passed. Regardless, the defendants did not interpose an objection to the opportunity afforded the plaintiffs.

[8] For example, BioSafe contended that Morris had provided no measureable benefit except for his labor as an employee (for which he had been paid) despite the designated evidence that Morris had conceptualized a new company to satisfy a niche market, paid back rent, signed a lease, and remodeled premises. Similarly, Crain and Redpath contended that Morris had been fully "and handsomely" paid for all his contributions. (App. 178.) There is also designated evidence that BioSafe marketed its services and products based upon the reputation, credentials, and involvement of three principals, including Morris. This would tend to show that a partnership had been formed.

the plaintiff's purported failure to establish a claim is not consistent with our summary judgment standard.

As we have previously observed, a party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Jackson v. Wrigley, 921 N.E.2d 508, 512 (Ind. Ct. App. 2010). It is only when the moving party satisfies this burden that the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. Id. Of course, a defendant may sometimes, through properly designated materials, negate an element of a plaintiff's claim at the summary judgment stage. However, the non-movant has no obligation to disgorge evidence in support of his claim until after the movant has met his burden. Cowe, 575 N.E.2d at 633.

Here, the trial court ordered the parties to implement a procedure inconsistent with summary judgment proceedings. Summary judgment was improvidently granted.

Reversed.

ROBB, C.J., and MATHIAS, J., concur.