**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**DOLEN GLENN**
Carlisle, Indiana

ATTORNEYS FOR AMICUS CURIAE
ACLU OF INDIANA:

**KENNETH J. FALK**
**KELLY R. ESKEW**
Indianapolis, Indiana



FILED
Dec 31 2014, 10:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| DOLEN GLENN, | ) | |
| Appellant-Plaintiff, | ) | |
| vs. | ) | No. 77A04-1404-CC-194 |
| DICK BROWN and INDIANA DEPARTMENT OF CORRECTION, | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE SULLIVAN CIRCUIT COURT
The Honorable Robert E. Springer, Judge
The Honorable Ann Smith Mischler, Magistrate
Cause No. 77C01-1403-CC-136

**December 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

### Case Summary

Pro-se appellant Dolen Glenn ("Glenn") appeals the denial of his motion to correct error, which challenged the dismissal of his complaint against the Indiana Department of Correction ("DOC"), Superintendent Dick Brown ("Brown"), and other DOC employees.[1] He presents the sole issue of whether the trial court properly dismissed his complaint. We reverse and remand.

### Facts and Procedural History

On March 7, 2014, Glenn filed in the Sullivan Circuit Court a Prisoner Complaint pursuant to 42 U.S.C. § 1983. Therein, he alleged:

> On [or] about 10-16-12, the mailroom confiscated [a] magazine called Computer World. Mrs. J. Watkins reviewed confiscation and agreed. Then file [sic] Grievance and agreed by Superintendent D. Brown and T. Littlejohn, then IDOC central office L.A. VanNatta, IDOC Final review agreed with the taking of [the] magazine. B. Lemmon, IDOC Commissioner [is] allowing his staff to violate the Freedom of speech of the Indiana and Federal Constitutions.

(App. 6.) Glenn checked a box on the pre-printed form indicating that he had filed a grievance and he attached "the response from the final step of the grievance process," as directed.[2] (App. 5.) The attached documentation included Glenn's handwritten request for

---

[1] None of the defendants have appeared as an active party to this appeal. The American Civil Liberties Union of Indiana has appeared as Amicus Curiae.

[2] In Higgason v. Stogsdill, 818 N.E.2d 486, 489 (Ind. Ct. App. 2004), we acknowledged that the procedural aspects of § 1983 claims made in either federal or state courts are controlled by the Prison Litigation Reform Act ("the PLRA"). 42 U.S.C. § 1997e(a) states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." However, the PLRA does not mandate that inmates specifically allege or demonstrate exhaustion in their

2

a DOC interview and the handwritten response, Glenn's letter requesting permission to receive four magazines and books[3] and the handwritten denial, two Notice and Report of Action Taken on Correspondence forms (dated September 18, 2012 and October 16, 2012), and an "Offender Grievance Response Report" showing Glenn's appeal to be "denied by L.A. VanNatta, final level of review, Offender Grievance Procedure – Policy #00-02-301." (App. 16.)

On March 14, 2014, the Sullivan Circuit Court entered an order of dismissal, providing in pertinent part:

> Pursuant to I.C. 34-58-1-1, this Court has examined Plaintiff's Prisoner Complaint and has determined, pursuant to I.C. 34-58-1-2, that the claim is frivolous in that it does not have an arguable basis in the law and does not state a claim upon which relief may be granted. Pursuant to Kimrey and Healey v. J. David Donahue, et al., 861 N.E.2d 379, 383 (Ind. App. 2007), there is a long standing principle that the judiciary is constrained from interfering with the internal procedures and policies of the Department of Correction.
>
> The Plaintiff has not submitted any documentation evidencing that he exhausted all administrative remedies available before filing this cause of action which is a prerequisite to filing suit.
>
> The Court finds Plaintiff has failed to name the proper party to this cause of action. Plaintiff has failed to allege facts sufficient to prosecute this action against the named Defendants in his Prisoner Complaint pursuant to I.C. 34-13-3-5(c) nor has Plaintiff established their liability given that qualified immunity that may protect the named Defendants from alleged violations of federal constitutional rights.

---

complaints. Jones v. Bock, 549 U.S. 199, 200 (2007). An allegation that a prisoner has failed to exhaust his administrative remedies may be raised as an affirmative defense by a defendant. Jackson v. Wrigley, 921 N.E.2d 508, 512 (Ind. Ct. App. 2010).

[3] These were: Computerworld, Web Designer, Practical Web Design, and Code Component Developer.

(App. 27.) Following the dismissal, Glenn filed a motion to correct error. The motion to correct error was denied; this appeal ensued.

## Discussion and Decision

Indiana Code Section 34-58-1-1 provides that "[u]pon receipt of a complaint of petition filed by an offender, the court shall docket the case and take no further action until the court has conducted the review required by section 2 of this chapter." Section 2(a) provides that a claim may not proceed if the court determines that the claim is frivolous, is not a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from liability for such relief. A claim is frivolous under the foregoing subsection if the claim is made primarily to harass a person or lacks an arguable basis in either law or fact. I.C. § 34-58-1-2(b).

We review the dismissal of an offender's complaint pursuant to section 34-58-1-2 by employing a de novo standard of review. Smith v. Ind. Dep't of Corr., 888 N.E.2d 804, 807 (Ind. Ct. App. 2008). We, like the trial court, look only to the well-pleaded facts contained in the complaint to determine whether it contains allegations concerning all of the material elements necessary to sustain a recovery under some viable legal theory. Id.

Glenn alleged that his reading material was confiscated and his free speech rights were thereby violated. The First Amendment protects the "right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557, 564 (1969). A prison inmate, although not retaining all the liberties and privileges enjoyed by other citizens, "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the

4

legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

When a prison regulation impinges upon an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests and does not represent an exaggerated response to those concerns. Turner v. Safley, 482 U.S. 78, 87 (1987). In order to reconcile the constitutional principles and penological needs, the Turner Court enumerated four factors to be considered in assessing the propriety of a prison regulation:

> (1) Whether the regulation has a valid, rational connection to a legitimate governmental interest put forward to justify it;
>
> (2) Whether there are alternative means for the prisoners to exercise the right in question;
>
> (3) The impact the accommodation of the right in question will have on guards, other prisoners, and the allocation of prison resources generally; and
>
> (4) Whether there are ready alternatives to the regulation.

Id. at 89-90. See also Faver v. Bayh, 689 N.E.2d 727, 731 (Ind. Ct. App. 1997) (reiterating that "to evaluate a challenged regulation, the court should consider the [foregoing] factors" and applying the Turner factors to an inmate claim).[4]

---

[4] Subsequently, with respect to protection of religious exercise of institutionalized persons, Congress replaced the "legitimate penological interest" standard articulated in Turner with the "compelling governmental interest" and "least restrict means" tests codified at 42 U.S.C. § 2000cc-1(a).

Here, the trial court conducted no hearing and did not articulate conclusions based upon a balancing of the Turner factors. The trial court concluded that the complaint facially "does not have an arguable basis in the law and does not state a claim upon which relief can be granted." (App. 27.) Glenn asserts that he has raised a First Amendment challenge in that freedom to read is akin to freedom of speech. He directs our attention to King v. Fed. Bureau of Prisons, 415 F.3d 634 (7th Cir. 2005), an appeal presenting very similar circumstances to those of the instant appeal. A prisoner sought to purchase a computer programming book but was denied the ability to do so and filed a complaint claiming that his constitutional rights had been violated. The Seventh Circuit Court of Appeals reviewed the dismissal of that complaint, stating in pertinent part:

> The refusal to allow King to obtain a book on computer programming presents a substantial First Amendment issue. Freedom of speech is not merely freedom to speak; it is also freedom to read. . . Forbid a person to read and you shut him out of the marketplace of ideas and opinions that it is the purpose of the free-speech clauses to protect. Not that there aren't valid penological reasons for limiting prison inmates' access to certain types of books. . . A prison need not allow prisoners to buy books detailing famous prison escapes, … or even, we suppose, books on how to make yourself as strong as Mike Tyson through exercise. … Were King in prison for computer hacking or other computer-related crimes, the prison could, in the interest of rehabilitation (i.e., preventing recidivism) … forbid him to buy a book that would enable him to increase his ability as a hacker when he's released. …. But he claims to want the book precisely for the purpose of rehabilitation – to equip him to work as a programmer when he is released. That is a proper goal; whether it is his actual goal the record does not enable us to determine.
>
> The only reason the prison has given for not wanting King to have the book he ordered, which teaches C//, a standard language in which computer programs are written, is that he might write programs with it that would disrupt the prison's computer system. However, computers that prisoners are permitted to use are not connected to the prison network, or any other

6

network. . . He has made a prima facie claim of infringement of his freedom of speech, and the government must present some evidence to show that the restriction is justified by the need to protect the prison's computer system.

Id. at 638-39 (citations omitted).

We find this reasoning persuasive and thus disagree with the trial court's determination of frivolousness. Glenn's complaint has a basis in law, specifically, the First Amendment to the United States Constitution. Although he ultimately may not prevail, we cannot say – absent development of a factual basis to permit application of the Turner factors – that he states no claim upon which relief could be granted.

The trial court perceived other infirmities in Glenn's complaint, stating that Glenn had failed to submit documentation of exhaustion of administrative remedies, that he had failed to name a proper party, and that the defendants might have the protections of qualified immunity. Aside from the apparently mistaken perception of a deficiency in the documents submitted,[5] the other alleged infirmities might be raised by one or more defendants at some point.[6] However, this is not the role of the trial court in conducting its review pursuant to Indiana Code section 34-58-1-2.

---

[5] Glenn was required to attach to his complaint the response from the final step of the prison grievance process. It appears that he did so, as the documentation appears in the Appendix. Nonetheless, no defendant has appeared in the trial court or this Court to claim otherwise.

[6] At this juncture, we cannot say that each and every defendant was a proper defendant. Glenn named public employees as individual defendants. Indiana Code section 34-13-3-5(c) provides that a suit "filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wonton; or (5) calculated to benefit the employee personally." However, Glenn named as defendants the DOC, the DOC Commissioner, and the superintendent in charge of his penal institution. Thus, he appeared to name an entity and individuals who, in their official capacity, properly have responsibility for the policy concerning possession of reading materials by a prisoner. Where some, but not all, defendants are

The statutory language plainly provides for an additional level of scrutiny of a prisoner's claims. However, we do not believe that the statutory scheme at issue is designed to allow a trial court judge to become an advocate for one party or sua sponte raise an affirmative defense on a party's behalf.

We reverse the dismissal and remand for further proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., and BROWN, J., concur.

---

improperly included in a prisoner lawsuit, dismissal of the complaint in its entirety is not the proper response. Smith, 888 N.E.2d at 809.