## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 25 2019, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael L. Einterz, Jr.
Einterz & Einterz
Zionsville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana REMS, LLC,<br>*Appellant-Defendant,*<br><br>v.<br><br>Brock H. Medsker,<br>*Appellee-Plaintiff.* | March 25, 2019<br><br>Court of Appeals Case No.<br>18A-PL-1704<br><br>Appeal from the Marion Superior Court<br><br>The Honorable John F. Hanley, Judge<br><br>Trial Court Cause No.<br>49D11-1708-PL-33345 |

**Robb, Judge.**

# Case Summary and Issue

[1] The buyer of certain real estate, Dr. Brock Medsker, argues he purchased two single-family homes for "a really good deal." The seller, Indiana REMS, LLC, argues it only intended to sell one single-family home. Medsker filed a complaint for declaratory judgment seeking to quiet title and REMS counterclaimed asking for, inter alia, the equitable rescission of the underlying purchase agreement due to a mutual mistake of fact. The trial court granted Medsker's motion for summary of judgment. REMS now raises two issues for our review, one of which we find dispositive: whether the trial court erred in granting summary judgment in favor of Medsker on REMS' counterclaim for mutual mistake of fact. Concluding genuine issues of material fact remain, we reverse and remand.

# Facts and Procedural History

[2] In early 2017, Medsker "was planning a move to Indianapolis due to accepting a position" with a local hospital and was "looking for a home to purchase." Appendix to Brief of Appellant, Volume II at 68. Medsker's realtor provided him with a listing for a single-family home for sale at "2134 N Delaware Street, Indianapolis, IN 46202-3702" with the legal description of "Morton Place Add L35 & L3." *Id*. at 73. The listing described the property as a 13,120 square foot lot at a price of "$725,000[.]" *Id*.

[3]     The single-family home with the address of 2134 N Delaware Street stands on Morton Place Lot 36. At the time REMS listed the property for sale, REMS also owned a lot with a single-family home under construction with the address of 2132 N Delaware standing on Lot 35, immediately south of Lot 36. There was a vacant lot, Lot 37, not owned by REMS, immediately north of Lot 36. From north to south, the relevant properties were as follows:

| Lot 37 | Lot 36 | Lot 35 |
| --- | --- | --- |
| Vacant Lot<br><br>Not owned by REMS | 2134 N Delaware St., the single-family home specified by address in the listing<br><br>Owned by REMS | 2132 N Delaware St., a single-family home then under construction<br><br>Owned by REMS |

[4]     On May 19, 2017, Medsker made an initial offer on the property consisting of a "double lot, on a standard Indiana Association of Realtors, Inc. form Purchase Agreement[,]" which "incorporated the original Listing."[1] *Id*. at 69. The initial offer repeated the truncated legal description of the property from the original listing, "Morton Place Add L35 & L3." *Id*. at 75. Following this incomplete legal description, the initial offer provided boilerplate language stating,

_____

[1] The initial offer stated an incorrect address of "2134 S Delaware St" in Indianapolis with the zip code of "46225-1904[,]" instead of 2134 N Delaware Street in Indianapolis with the zip code of 46202-3702. *Id*. at 69. This incorrect address was repeated in both of Medsker's counteroffers including Counter Offer # 4 which was accepted. This error was eventually corrected in the amendment to purchase agreement executed on June 19, 2017.

"together with any existing permanent improvements and fixtures attached (unless leased or excluded) . . . and the following:" after which Medsker inserted "[a]ll items per [the listing]." *Id.* This initial offer was for $680,000. *Id.*

On May 21, 2017, the parties agreed on Counter Offer # 4, setting a purchase price of $700,000 and thereby finalizing the purchase agreement. *See id.* at 85. The parties executed an amendment to purchase agreement on June 19, 2017, stating "[REMS] and [Medsker] agree that the $7,500 credits toward wet bar and fence is removed from the purchase agreement." *Id.* at 86.

In furtherance of the purchase agreement, the parties engaged First American Title Insurance Company to research title for the property. The commitment included the following legal description of the property:

> Lots Numbered Thirty-Five (35) and Thirty-Six (36) in Morton Place, now in the City of Indianapolis as per plat thereof recorded December 23, 1891 in Plat Book 10, page 100, in the Office of the Recorder of Marion County, Indiana.

*Id.* at 93. On May 24, 2017, First American confirmed that "The Fee Simple interest" in the property was owned by REMS. *Id.* at 88.

Medsker also obtained a residential appraisal report which identified the property as 2134 N Delaware Street, referenced the original listing, described the property as a 13,120 square foot lot, and rendered an appraised value of $700,000. *Id.* at 98, 99. Although the report included a legal description of

"Morton Place Add L35 & L36," *id*. at 98, the report only included a general description, *id*., photographs, *id*. at 113-23, floor plans, *id*. at 130, map, *id*. at 132, and tax information, *id*. at 137, of the single-family home with the address of 2134 N Delaware Street situated on Lot 36. Aside from several mentions of "L35[,]" *see, e.g., id*. at 98, 136, there is no indication that the report considered the single-family home under construction on Lot 35 with the address of 2132 N Delaware Street in its calculation of the appraised value of the property, *see id*. at 98-137. Additionally, in response to inquiries about where to place a fence, REMS emailed Medsker a survey of the property. The survey identified Lots 35 and 36 but did not depict either of the structures on the properties. *See id*. at 74.

[8] David Tang, managing member of REMS, made and executed a deed for Lot 35 on July 7, 2017. Closing on the purchase occurred on July 10, 2017, with the closing statement describing the property as "2134 North Delaware Street, Indianapolis, IN 46202." *Id*. at 159. At closing, Medsker executed a mortgage in favor of BMO Harris Bank which identified the property as "Lots Numbered Thirty-Five (35) and Thirty-Six (36) in Morton Place[.]" *Id*. at 140. Medkser later realized the warranty deed only applied to Lot 35 and omitted Lot 36 when he received a recorder's stamped copy of the mortgage by mail. *See id*. at 70, ¶ 16. Medsker contacted First American and, with REMS' permission, First American crossed out "35" to replace it with "36[.]" *See Id*. at 65. The warranty deed also contained the handwritten notation "Re-Record to correct legal description." *Id*.

Due to confusion surrounding the second warranty deed, the Marion County Assessor's Office refused to transfer the property to Medsker. On August 30, 2017, Medsker filed a complaint for declaratory judgment seeking to quiet title for both properties. REMS counterclaimed asking for, inter alia, the equitable rescission of the underlying purchase agreement due to a mutual mistake of fact. On April 4, 2018, Medsker filed a motion for judgment on the pleadings or, alternatively, a motion for summary judgment. REMS declined to designate evidence to the contrary and rested on its pleadings. After a hearing on June 21, the trial court issued an order granting summary judgment in favor Medsker and denying REMS' counterclaims, concluding:

> The Court has reviewed the designated and undisputed facts in this matter and finds that the Deeds vest fee simple ownership in both Lot 35 and 36 of the Real Estate in [Medsker] and that [REMS] retains no interest in the Real Estate. The Court further finds that the Purchase Agreement is unambiguous and in agreement with the Deeds issued and that the intent of the parties was to transfer both Lot 35 and 36 and all improvements thereon to [Medsker] from [REMS].

Appealed Order at 1. REMS now appeals.

# Discussion and Decision

## I. Standard of Review

Summary judgment allows for a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party has the initial burden to show the absence of any genuine issue of material

fact as to a determinative issue. *Id*. As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id*. (quotation omitted). The burden then shifts to the non-moving party to come forward with contrary evidence showing an issue to be determined by the trier of fact. *Id.* Although this contrary evidence may consist of as little as a non-movant's designation of a self-serving affidavit, summary judgment may not be defeated by an affidavit which creates only an issue of law—the non-movant must establish that material *facts* are in dispute. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 441-42 (Ind. 2015).

[11] On appeal, we review summary judgment with the same standard employed by the trial court: relying only on the evidence designated by the parties and construing all facts and reasonable inferences in favor of the non-moving party, we will affirm the grant of summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C); *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . or if the undisputed material facts support conflicting reasonable inferences." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 253 (Ind. 2015) (citation omitted).

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but they are not binding on this court. *Id*. We will affirm upon any theory or basis supported by the designated materials. *Id*. However, Indiana's onerous and distinctive summary judgment standard is aimed at protecting a party's day in court and we must therefore carefully assess the trial court's decision. *Id.*

## II. Mutual Mistake of Fact

The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties. *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012). There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. *Bennett v. Broderick*, 858 N.E.2d 1044, 1048 (Ind. Ct. App. 2006), *trans. denied*. The doctrine of mutual mistake provides that "where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Perfect v. McAndrew*, 798 N.E.2d 470, 478 (Ind. Ct. App. 2003).

It is not enough that both parties are mistaken about any fact; rather, the mistaken fact must be one that is "of the essence of the agreement, the sine qua non, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." *Id*. (quoting *Bowling v. Poole*, 756 N.E.2d 983, 989 (Ind. Ct. App. 2001)). Parol evidence may be considered in determining whether the parties entered into a contract based on a mutual mistake of fact. *Kramer v. Focus Realty Group*, LLC, 51 N.E.3d 1240, 1243 (Ind. Ct. App. 2016).

REMS argues the trial court's grant of summary judgment in favor of Medsker "was erroneous because, at a minimum, genuine issues of material fact exist concerning Indiana REMS's claim of mutual mistake [of fact]." Brief of Appellant at 13. Specifically, REMS argues "neither party intended or believed that the Purchase Agreement encompassed or included the single-family home located at 2132 N Delaware [Lot 35]." *Id*. at 15 (citing App. to Br. of Appellant, Vol. II at 42).

Medsker begins by asserting his "ownership of the Property is unchallenged" because "an attack on the Purchase Agreement is inconsequential" once the transaction has been completed by a deed being made, executed, and delivered. Appellee's Brief at 10-12. However, in *Stack v. Commercial Towel & Uniform Serv.*, this court held, sitting en banc:

> The principle of law is well stated that when the deed in question was executed, all prior agreements whether oral or written, are merged in the latter instrument and any variance or

inconsistencies therein must yield to the language of the last document, however this principle does not prevent reformation for mistake of fact. Unless so recognized, there never could be a reformation.

* * *

The doctrine of merger does not apply and cannot be asserted in an action like the case at bar brought to reform a deed because of the mistake in preparing the deed to carry out the confessed and admitted intentions of the parties to the agreement which preceded the deed and pursuant to which the deed was executed by the grantor.

120 Ind. App. 483, 492-94, 91 N.E.2d 790, 794-95 (1950) (citations omitted). Indeed, it would be a curious juxtaposition if the law recognized a mutual mistake of fact led to the delivery of a deed but, once delivered, the law rendered such a mutual mistake "inconsequential." Accordingly, we view REMS' argument regarding a mutual mistake of fact as properly challenging Medsker's ownership of the property.

[17] In its counterclaim seeking rescission of the contract, REMS alleged that "neither party intended or believed that the Purchase Agreement encompassed or included the single-family home located at 2132 N Delaware [Lot 35]." App. to Br. of Appellant, Vol. II at 41. Thereafter, Medsker designated an affidavit stating, in relevant part:

21. At the time of making the offer, I relied upon representations by REMS' agent and information in the Listing, and I intended to purchase two lots, identified as

> 35 and 36, with a total area of 13,120 sq. ft, and all improvements.
>
> 22. My understanding of the content, arrangement, and value of the Real Estate, including improvements, prior to closing was based upon the Listing, the Appraisal Report, the Title Search, the Title Commitment, the Purchase Agreement, and the survey received from REMS.
>
> 23. Throughout the purchase and due diligence process my understanding did not change and was confirmed by the investigation of the appraiser, the delivery of the survey, and REMS behavior in furtherance of the Purchase Agreement without modification or amendment.
>
> 24. At all times, I intended to purchase the identified Real Estate and all permanent improvements, appraised at $700,000, and consisting of Lots 35 and 36.

App. to Br. of Appellant, Vol. II at 71. Medsker also points to additional evidence, including the fact that REMS had issued deeds for each of the two lots and that the purchase agreement, listing, appraisal, property record, survey, title commitment, and mortgage, all agreed that the property consisted of two lots, had the same parcel number, and a size of 13,120 square feet. Medsker argues that at a minimum, this evidence shifted the burden to REMS to designate evidence that a genuine issue of material fact remained and, because REMS chose to simply rest on its pleadings rather than designate contrary evidence, the trial court properly granted summary judgment in his favor.

[18]  To ascertain whether Medsker's designated evidence "affirmatively negate[d]" REMS' claim as our summary judgment standard demands, *Hughley*, 15 N.E.3d at 1003, we must first determine whether the essence of the purchase agreement, or its sine qua non, was the purchase of a number of *homes* or a number of *lots. See Perfect*, 798 N.E.2d at 478. Indeed, REMS argues the essence of the purchase agreement was the single-family home, namely 2134 N Delaware Street standing on Lot 36, while Medsker maintains that he intended to buy both lots with all improvements thereon.

[19]  We find guidance on this issue in the holding of *Perfect v. McAndrew*, 798 N.E.2d 470. There, based on the acreage provided in the deed, McAndrew offered to purchase a property from the Perfects describing the property as "Anderson Rd, 81.1 acres owned by Perfects." *Id*. at 472. McAndrew accepted the Perfects' counteroffer but a survey of the property before closing disclosed that the property contained over 96 acres rather than the 81.1 provided in the deed. Thereafter, the Perfects attempted to renegotiate the contract because they "didn't want to give away 15 acres." *Id*. at 473. After renegotiation attempts failed, the Perfects refused to convey the property and McAndrew filed a complaint for specific performance. The trial court concluded, inter alia, that there was a meeting of the minds and that there was no mutual mistake of fact regarding the property.

[20]  On appeal, the Perfects argued that a shared belief that the property was 81.1 acres constituted a mutual mistake of fact while McAndrew argued the specific acreage was not the "essence of the agreement[.]" *Id*. at 478. A panel of this

court looked to testimony by a member of the Perfect family that "[t]here wasn't any question about which piece of property [they] were dealing for[,]" as well as evidence that the parties walked the property and looked at its boundaries and that there were no conversations about the acreage or price per acre and affirmed the trial court, concluding the estimated acreage was "merely a manner of describing the property." *Id*. at 478-79. Similarly, in *Bowling*, a panel of this court held that the number of acres in a purchase agreement was not the essence of the contract where the parties had described the property in terms of boundary lines and included a lump sum price. 756 N.E.2d at 989.

[21] Whereas both *Perfect* and *Bowling* lacked evidence that the specific acreage was the essence of the parties' agreements, evidence that the number of single-family homes was the essence of the parties' agreement exists here—and it exists in the form of Medsker's own designated evidence.[2] Medsker makes much of his statements that he intended to purchase two lots, both Lot 35 and Lot 36, with all improvements thereon, and, standing alone, we would ordinarily conclude these statements were sufficient to shift the burden to REMS. *See* App. to Br. of Appellant, Vol. II at 71, ¶¶ 21, 24. These statements, however, do not stand alone.

---

[2] We are cognizant, of course, of the differences in the procedural posture of this case and *Perfect* and *Bowling* as this case was disposed of on summary judgment whereas both of those cases were reviewed for clear error after bench trials. *See Perfect*, 798 N.E.2d at 473; *Bowling*, 756 N.E.2d at 988.

[22] In *Siner v. Kindred Hosp., Ltd. P'ship*, our supreme court reviewed a medical malpractice action where two physicians moved for summary judgment designating the affidavits of Dr. Krueger, a member of the medical review panel, who opined that the physicians "did not cause injury to [the plaintiff]" in administering her pulmonary care. 51 N.E.3d 1184, 1186 (Ind. 2016). The court explained that although Dr. Krueger's affidavits

> provide evidence on [the plaintiff's] pulmonary care and would be sufficient, standing alone, to shift the burden to [the plaintiffs] on those claims. The affidavits do not, however, stand alone— [the defendants] also designated as evidence the medical review panel's opinion that the defendants' "conduct may have been a factor of some resultant damages, but not the death of the patient."

*Id*. at 1189. The court then explained that taking all reasonable inferences in favor of the non-moving party, the defendants' "*own* designated evidence establishes a genuine issue of material fact on the element of causation, preventing them from affirmatively negating the [the plaintiffs'] claims[.]" *Id*.

[23] In addition to Medsker's statements that he intended to buy Lot 35 and Lot 36 with all improvements thereon, Medsker also designated evidence tending to prove the purchase of one single-family home was the essence of the purchase agreement. Indeed, within the same affidavit, Medsker's self-proclaimed intent was that he was "looking for a home to purchase[,]" and that one "home that [he] became aware of was 2134 N. Delaware [Street]." App. to Br. of Appellant, Vol. II at 68, 69, ¶¶ 4, 6. Medsker also stated:

My understanding of the content, arrangement, and value of the Real Estate, including improvements, prior to closing was based upon the Listing, the Appraisal Report, the Title Search, the Title Commitment, the Purchase Agreement, and the survey received from REMS.

*Id.* at 71, ¶ 22. Both the listing and the purchase agreement included a truncated legal description of "Morton Place Add L35 & L3." *Id*. at 73, 75. This incomplete legal description does not clearly identify the lots and they contain only a single address, 2134 N Delaware Street, which is Lot 36. *Id*. at 73, 86. More importantly, however, the listing, which is incorporated by the purchase agreement, only provides the details of the single-family home on Lot 36, with no mention of the single-family home under construction on Lot 35. *Id.* at 73.

[24] While the rest of the documents contain references to both Lot 35 and Lot 36, these documents indicate the presence of only one single-family home on the property. Perhaps most tellingly, the appraisal report rendered an appraised value of $700,000 including a general description, *id*. at 98, photographs, *id*. at 113-23, floor plans, *id*. at 130, map, *id*. at 132, and tax information, *id*. at 137, of only the single-family home with the address of 2134 N Delaware Street situated on Lot 36. All of this evidence suggests that one single-family home, not two lots, was the essence of the purchase agreement.

[25] Drawing all reasonable inferences in favor of REMS, the non-moving party, we conclude Medsker's own designated evidence created a genuine issue of material fact and Medsker failed to affirmatively negate REMS' claim of

mutual mistake of fact. Therefore, the burden never shifted to REMS and regardless of whether REMS designated its own evidence, the grant of summary judgment in Medsker's favor was improper. *See Hughley*, 15 N.E.3d at 1004.

[26] Having determined a genuine issue of material fact remains as to whether a mutual mistake of fact occurred, REMS argues "there is no need to even remand this case for a factfinder to determine the existence of a mutual mistake" and invites us to rescind the purchase agreement as a matter of law. Br. of Appellant at 18. However, as the parties apparently agree, REMS still bears the burden of proving its counterclaim by demonstrating a mutual mistake with clear and convincing evidence. *See Estate of Reasor v. Putnam Cty.*, 635 N.E.2d 153, 160 (Ind. 1994). As such, we must decline REMS' invitation and remand for further proceedings. *See Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760, 771 (Ind. Ct. App. 2003) (noting that "Indiana law is clear that whether the evidence meets the clear and convincing standard is not the proper inquiry on a summary judgment motion because such inquiry merely invites a weighing of the evidence.")

# Conclusion[3]

---

[3] As Medsker's claim for declaratory relief is premised upon the absence of a mutual mistake of fact, we also reverse the trial court's grant of summary judgment on this issue and remand for further proceedings.

For the reasons stated above, we conclude genuine issues of material fact remain regarding REMS' counterclaim for mutual mistake of fact. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

Reversed and remanded.

Riley, J., and Kirsch, J., concur.